**LOGAN FARMS, INC., Plaintiff,**

v.

**Michael ESPY, Secretary, United States Department of Agriculture, Defendant.**

**Pete BOHM d/b/a Bohm Farm and Ranch, Inc., Plaintiff,**

v.

**Michael ESPY, Secretary of United States Department of Agriculture, Defendant.**

**Nos. 93–4256–SAC, 94–4012–SAC.**

United States District Court, D. Kansas.

April 14, 1995.

---

David L. Stutzman, Arthur, Green, Arthur, Conderman & Stutzman, Manhattan, KS, for Logan Farms, Inc.

Tanya S. Wilson, Office of U.S. Atty., Topeka, KS, for Secretary of U.S. Dept. of Agriculture, Michael Espy.

Eugene W. Hiatt, Hiatt & Hiatt, Chtd., Topeka, KS, and Joe A. Summerford, Summerford, Greenaway & Zelinski, Fayetteville, AR, for Pete Bohm dba Bohm Farm and Ranch, Inc.

## MEMORANDUM AND ORDER

CROW, District Judge.

On January 27, 1993, Carolyn A. Burchett, as Director of the National Appeals Division (NAD) of the Agricultural Stabilization and Conservation Service (ASCS) of the United States Department of Agriculture, issued an eleven page decision addressing an appeal from a determination that Bohm Farm and Ranch, Inc., Logan Farms, Inc. (Logan Farms), Downs National Bank, Andrew Byrnes, Robert Shumate, Robert Bohm (Pete Bohm's son) and Karen Smith, together, are one "person" for payment limitation purposes in various combinations for the crop-years 1985 through 1988.[1] That decision, *inter alia,* found Logan Farms and Bohm jointly and severally liable for certain amounts to be refunded to the government. *See* 7 C.F.R. § 795.20. Specifically, the Secretary made the following determinations:

| Year | Finding | Overpayment |
|------|---------|-------------|
| 1985 | Bohm and Logan Farms treated as one person | $ 16,705 |
| 1986 | Bohm, Logan Farms, Smith, Shumate, Downs National Bank and Byrnes treated as one person | 86,872 |

---

1. The plaintiffs in the case at bar were participants in certain production adjustment programs. During the relevant years, participation in certain federal programs regulating the production of certain agricultural products was limited to $50,000 per person per year. *See* 7 U.S.C. § 1308; 7 C.F.R. § 795.3; *Val Farms v. Espy,* 29 F.3d 1470 (10th Cir.1994). By combining the plaintiffs and others into one person in each of the relevant years, the Secretary determined that those persons exceeded the $50,000 limitation in each of those years.

In *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1566 (10th Cir.1994), the Tenth Circuit provides in great detail an overview of the workings and administration of the price support programs within the statutory and regulatory framework.

| Year | Finding | Overpayment |
|------|---------|-------------|
| 1987 | Bohm, Logan Farms, Downs National Bank, Robert Bohm and Byrnes treated as one person | 65,187 |
| 1988 | Bohm, Logan Farms, Smith, Robert Bohm and Byrnes treated as one person | 12,505 |
| | **Total Overpayments:** | **$181,269** |

On December 9, 1993, Logan Farms filed a complaint seeking judicial review of the defendant's January 27, 1993, decision. Logan Farms seeks a declaratory judgment that it is a separate "person" under the Payment Limitation Regulations, that it is not jointly and severally liable for any overpayments, and requests that the defendant's decision be set aside under Administrative Procedure Act (APA).[2]

On January 25, 1994, Bohm filed a complaint similar to the complaint filed by Logan Farms, seeking judicial review of the defendant's January 27, 1993, decision. Specifically, the complaint "seeks a declaratory judgment that the plaintiff should not be combined with the separate individuals and should be declared a separate 'person' under the Payment Limitation Regulations and that the Department's determination to the contrary should be set aside pursuant to the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 701, et seq. (1982)."

At the core of each plaintiff's position is their contention that Bohm was a "custom farmer" who provided custom farming services to each of his clients, one of which was Logan Farms. The plaintiffs contend that the Secretary's determination that Bohm was not a custom farmer is based upon a misreading of the relevant regulations and a misapplication of the facts to those regulations.

On April 28, 1994, the defendant filed an answer and counterclaim to Bohm's complaint. In its counterclaim, even though his own decision had ruled otherwise, the defendant asserted that Bohm entered into a scheme and device for the purpose of defeating the payment limitations provision found in the Agriculture and Food Act of 1981. See 7 C.F.R. § 795.17.[3] As a consequence, the counterclaim alleged that Bohm and his accomplices received excess Commodity Credit Corporation Price Support and Production Adjustment Program payments totaling $196,316.29 for the program years of 1985 through 1988. Those program payments were unearned and obtained in violation of the statutory and regulatory restrictions on payments exceeding $50,000 per farming year. According to the defendant, the investigative branch of the Department of Agriculture, the Office of Investigations, conducted a formal investigation of Bohm and his accomplices and prepared a report containing evidence indicating that they had engaged in a scheme and device to defeat the annual $50,000 program payment restriction. "The amount of the original claim has been reduced as a result of the administrative setoff of program payments to a current principal balances owed of $57,854.00 and interest of $12,140.55 as of May 1, 1994, with a daily accrual of $17.18." The defendant asked the court to deny the relief requested by the plaintiff and for the court to enter judgment

---

2. On March 14, 1994, the defendant filed its answer to Logan Farms' complaint. On May 2, 1994, Logan Farms filed an amended complaint. On May 16, 1994, the defendant filed its answer and counterclaim. On May 18, 1994, Logan Farms filed a reply to the defendant's counterclaim.

3. 7 C.F.R. § 795.17 provides:
   **Scheme or Device.**
   All or any part of the payments otherwise due a person under the upland cotton, wheat, feed grain and rice programs on all farms in which the person has an interest may be withheld or required to be refunded if the person adopts or participates in adopting any scheme or device designed to evade or which has the effect of evading the rules of this part. Such acts shall include, but are not limited to, concealing from the county committee any information having a bearing on the application of the rules of this part or submitting false information to the county committee (for example, a set-aside agreement which is entered into that differs from information furnished to the county committee concerning the manner in which program payments are actually shared, concerning the actual facts of a sale, or concerning the transfer of property) or creating fictitious entities for the purpose of concealing the interest of a person in a farming operation.

on its counterclaim in the amount of $57,-854.00 plus interest. The defendant filed a similar answer and counterclaim to Logan Farms' amended complaint.

On July 5, 1994, this court entered an order consolidating Case No. 93–4256–SAC and Case No. 94–4012–SAC for all further proceedings (Dk. 17).

Bohm subsequently filed a motion to dismiss the defendant's counterclaim, basically challenging the defendant's ability to appeal his own decision. On November 23, 1994, the court entered an order denying without prejudice Bohm's motion to dismiss the defendant's counterclaim. *See Logan Farms, Inc. v. Espy*, No. 93–4256–SAC, 1994 WL 732672, 1994 U.S. Dist.LEXIS 19139 (D.Kan. Nov. 23, 1994). However, the court ordered the defendant to show cause within ten days of the date of that order why his counterclaim should not be dismissed. On December 19, 1994, based upon the stipulation and agreement of the parties, the court granted the United States' motion for an order dismissing its counterclaims against both Logan Farms and Bohm. *See* (Dk. 52).

This case comes before the court upon the following motions:

1. Motion for summary judgment of Logan Farms, Inc. (Dk. 24).

2. Motion for summary judgment [filed by Pete Bohm, d/b/a Bohm Farm and Ranch, Inc.] (Dk. 22).

3. Motion of the United States for Summary Judgment (Dk. 26).[4]

A response to each motion for summary judgment has been filed. Bohm and the United States each filed a reply brief.

While not raised by any of the parties, since the time the parties filed their respective motions for summary judgment, the Tenth Circuit has explicitly prohibited the use of summary judgment procedures in reviewing decisions under the Administrative Procedure Act. According to the Tenth Circuit, the use of summary judgment procedures by the district court "is inconsistent with the standards for judicial review of agency action under the APA." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579 (10th Cir.1994).[5] One of the primary reasons that summary judgment is an inappropriate procedure for review under the APA is that "it permits the issues on appeal to be defined by the appellee and invites (even requires) the reviewing court to rely on evidence outside the administrative record." *Id.* at 1579–1580. "Reviews of agency action in the district court's must be processed *as appeals.*" *Id.* at 1580. In *Olenhouse*, based upon the district court's reliance on summary judgment procedures, including reliance on materials outside the administrative record, as well as other errors, the Tenth Circuit reversed the district court.

■ In face of the pending motions for summary judgment, the court believes there are two options: (1) Deny the pending motions for summary judgment and set a schedule for briefing the issues presented on appeal; or (2) Ignore the summary judgment standards and treat the pending motions for summary judgment and responses and replies filed by each of the parties as briefs of the respective parties. The court believes the latter course to be the most expeditious and beneficial to the parties. Each of the parties has been provided with ample opportunity to advance any and all legal and factual arguments in support of their respective positions. Because the court will base its decision on the standards actually governing this case, and because the court will rely only upon the evidence contained in the administrative record in determining whether the Secretary's decision was arbitrary, capricious or contrary to the law, none of the parties will be prejudiced by the posturing of their respective positions as motions for summary judgment. Requiring the parties to invest the time, money and resources to file new

4. In its motion for summary judgment, the United States not only seeks affirmance of the Secretary's decision, but also seeks summary judgment on its counterclaims against Logan Farms and Bohm. This portion of the United States' brief is moot in light of the dismissal of its counterclaims against each of the plaintiffs. Similarly, the portions of the plaintiffs' briefs addressing the merits of the United States' counterclaim are also moot.

5. *Olenhouse* was decided on December 20, 1994, after the parties filed their respective briefs.

briefs, briefs which essentially advance the same legal and factual points without summary judgment nomenclature, would serve little or no purpose.

### Standard of Review

■ "The [APA] provides that '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof,' 5 U.S.C. § 702, and [the Supreme Court has] read the Act as embodying a 'basic presumption of judicial review.'" *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1449 (10th Cir.1994) (quoting *Lincoln v. Vigil,* — U.S. —, —, 113 S.Ct. 2024, 2030, 124 L.Ed.2d 101 (1993) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967))). Actions of agencies reviewed under the APA shall not be overturned unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Colorado Department of Social Services v. United States Department of Health and Human Services,* 29 F.3d 519, 522 (10th Cir.1994) ("We review the agency action to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' *See Administrative Procedure Act,* 5 U.S.C. § 706(2).").[6]

The court examines whether the agency based its decision on consideration of relevant factors, whether there has been clear error of judgment, and whether the agency complied with procedural requirements. *Citizens to Preserve Overton Park [v. Volpe],* 401 U.S. [402] at 416 [91 S.Ct. 814, 823–24, 28 L.Ed.2d 136.] (1971). While the court is to make a "searching and careful" inquiry into the facts, it is not to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park,* 401 U.S. at 416 [91 S.Ct. at 823–24.] Judicial review focuses on the administrative record existing before the agency. *Camp v. Pitts,* 411 U.S. 138, 142 [93 S.Ct. 1241, 1244, 36 L.Ed.2d 106] (1973).

*State of Kan., ex rel. Todd v. United States,* 791 F.Supp. 1491, 1494 (D.Kan.1992), *aff'd,* 995 F.2d 1505 (10th Cir.1993).

Because the arbitrary and capricious standard focuses on the rationality of an agency's decisionmaking process rather than on the rationality of the actual decision, "it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs.,* 463 U.S. at 50 [103 S.Ct. at 2870.] Thus, the grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record. *American Petroleum [Institute v. Environmental Protection Agency ]* 540 F.2d [1023] at 1029 (10th Cir.1976) (construing *Motor Vehicle Mfrs.*).

*Olenhouse,* 42 F.3d at 1575.

In *Olenhouse,* the Tenth Circuit held that an agency's action will not be sustained unless it is supported by substantial evidence:

In addition to requiring a reasoned basis for agency action, the "arbitrary or capricious" standard requires an agency's action to be supported by the facts in the record. In reviewing the administrative record for factual support, we adopt the analysis articulated by then-Judge Scalia in *Ass'n of Data Processing v. Bd. of Governors,* 745 F.2d 677, 683 (D.C.Cir.1984), and rule informal agency action will be set aside as arbitrary if it is unsupported by "substantial evidence." This is not to substitute the "arbitrary or capricious" standard applicable to informal agency action under § 706(2)(A) with the arguably more stringent standard of review applicable to for-

---

6. In *Colorado Department of Social Services,* the Tenth Circuit stated:

Our review is narrow and deferential; we must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). When, as here, a dispute concerns an agency's interpretation and application of its own regulations, we give substantial deference to the agency. *See Downtown Medical Ctr. v. Bowen,* 944 F.2d 756, 768 (10th Cir.1991). We will affirm if we find that the agency considered "all relevant factors and articulated a rational connection between the facts found and the choice made." *Action, Inc. v. Donovan,* 789 F.2d 1453, 1457 (10th Cir.1986).

29 F.3d at 522.

mal agency action under § 706(2)(E). It is simply an acknowledgment that

"when the arbitrary or capricious standard is performing that function of assuring factual support, there is no substantive difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense." *Id.* at 684 (emphasis in original).

Evidence is substantial in the APA sense if it is "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn is one of fact." *Id. (quoting Illinois Central R.R. v. Norfolk & Western Ry.,* 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966)). *Olenhouse,* 42 F.3d at 1575 (footnote omitted).

The general rule that review of an administrative decision is limited to the administrative record is subject to certain, limited exceptions.

A reviewing court may go outside of the administrative record only for limited purposes. For example: Where the administrative record fails to disclose the factors considered by the agency, a reviewing court may require additional findings or testimony from agency officials to determine if the action was justified, *Overton,* 401 U.S. at 420 [91 S.Ct. at 825–26;] or where necessary for background information or for determining whether the agency considered all relevant factors including evidence contrary to the agency's position, *Thompson v. United States Dept. of Labor,* 885 F.2d 551, 555 (9th Cir.1989); or where necessary to explain technical terms or complex subject matter involved in the action, *Animal Defense Council v. Hodel,* 867 F.2d 1244, 1244 (9th Cir.1989), and *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988). *Franklin Sav. v. Director, Office of Thrift Super.,* 934 F.2d 1127, 1137 (10th Cir.1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1991); *see, e.g., Friends of Payette v. Horseshoe Bend Hydroelectric,* 988

F.2d 989, 997 (9th Cir.1993) ("Generally, review of agency action, including review under NEPA, is limited to the administrative record but may be expanded beyond the record if necessary to explain agency decisions.").

### Statutory Limitations on Review

In addition to the APA, the court must consider whether two other statutes which may potentially limit the court's review in this case.

7 U.S.C. § 1385 provides in pertinent part:

"The facts constituting the basis for any ... payment under the wheat ... program[ ] authorized by [the Agriculture Act of 1949] ... or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government."

7 U.S.C. § 1429 provides:

"Determinations made by the Secretary under [the Agriculture Act of 1949] shall be final and conclusive: *Provided,* That the scope and nature of such determinations shall not be inconsistent with the provisions of the Commodity Credit Corporation Charter Act [15 U.S.C. § 714 *et seq.*]." (Emphasis original).

In *Olenhouse* the Tenth Circuit concluded that these statutes did not limit its review in that case. 42 F.3d at 1572–1573. Specifically, the Tenth Circuit stated:

The essence of the Farmers' claims is the ASCS action violated due process, substantively in the sense of being arbitrary or capricious, and procedurally in the sense of denying minimum safeguards. Neither statute precludes judicial consideration of such claims; rather, consistent with the judicial review provisions of the APA, each prevents the reviewing court from substituting its judgment on the facts for that of the agency.

42 F.3d at 1573.

In the case at bar, the plaintiffs challenge the Secretary's legal analysis, the legal standards he applied and whether his decision

has a rational basis in the administrative record. To that extent, neither statute precludes judicial review in this case.

### Relevant Regulations

The following payment limitation regulations govern the plaintiffs' liability in this case:

7 C.F.R. § 795.3,[7] **Definitions,** provides in pertinent part:

> (b)(1) Subject to the provisions of this part, the term "person" shall mean an individual, joint stock company, corporation, association, trust, estate, or other legal entity. In order to be considered to be a separate person for the purposes of this part with respect to any crop, in addition to any other provision of this part, an individual or other legal; entity must:
>
> > (i) Have a separate and distinct interest in the crop or the land on which the crop is produced;
> >
> > (ii) Exercise separate responsibility for such interest; and
> >
> > (iii) Be responsible for payment of the cost of farming related to such interest from a fund or account separate from that of any other individual or entity.
>
> .   .   .   .   .

7 C.F.R. § 795.6, **Multiple individuals or other entities,** provides:

> The rules in §§ 795.5 through 795.16 shall be used to determine whether certain multiple individuals or legal entities are to be treated as one person or as separate persons for the purpose of applying the limitation. In cases in which more than one rule would appear to be applicable, the rule which is most restrictive on the number of persons shall apply.

7 C.F.R. § 795.16, **Custom Farming,** provides:

> (a) Custom farming is the performance of services on a farm such as land preparation, seeding, cultivating, applying pesticides, and harvesting for hire with remuneration on a unit of work basis, except that, for the purpose of applying the provisions of this section, the harvesting of crops and the application of agricultural chemicals by firms regularly engaged in such businesses shall not be regarded as custom farming. A person performing custom farming shall be considered as being separate from the person for whom the custom farming is performed only if:
>
> > (1) The compensation for the custom farming is paid at a unit of work rate customary in the area and is in no way dependent upon the amount of the crop produced, and (2) the person performing the custom farming (and any other entity in which such person has more than a 20–percent interest) has no interest, directly or indirectly, (i) in the crop on the farm by taking any risk in the production of the crop, sharing in the proceeds of the crop, granting or guaranteeing the financing of the crop, (ii) in the allotment on the farm, or (iii) in the farm as landowner, landlord, mortgage holder, trustee, lienholder, guarantor, agent, manager, tenant, sharecropper, or any other similar capacity.
>
> (b) A person having more than a 20–percent interest in any legal entity performing custom farming shall be considered as being separate from the person for whom the custom farming is performed only if:
>
> > (1) The compensation for the custom farming service is paid at a unit of work rate customary in the area and is in no way dependent upon the amount of the crop produced, and (2) the person having such interest in the legal entity performing the custom farming has no interest,

---

**7.** In *Martin v. Bergland,* 639 F.2d 647, 648 (10th Cir.1981), the Tenth Circuit explained the distinctions between § 795.3 and § 795.5–.16:

> As the district court noted, these generally applicable conditions [in § 795.3] define "person" on the basis of the farmer's relationship to his land. Sections 795.5–.16, on the other hand, define "person" solely with reference to one entity's relationship to another: if the specified relationship exists be it between a corporation and a stockholder (§ 795.8), an estate or trust (§ 795.9), or a minor child and his guardian or parents (§ 795.12) multiple entities are deemed to be a single person, even though they might otherwise qualify under the generally applicable conditions for consideration as multiple persons.

(footnote omitted).

directly or indirectly, (i) in the crop on the farm by taking any risk in the production of the crop, sharing in the proceeds of the crop, granting or guaranteeing the financing of the crop, (ii) in the allotment on the farm, or (iii) in the farm as landowner, landlord, mortgage holder, trustee, lienholder, guarantor, agent, manager, tenant, sharecropper, or in any other similar capacity.

7 C.F.R. § 795.20, **Joint and several liability,** provides:

Where two or more individuals or legal entities, who are treated as one person hereunder, receive payments which in the aggregate exceed the limitation, such individuals or legal entities shall be liable, jointly and severally, for any liability arising therefrom. The provisions of this part requiring the refund of payments shall be applicable in addition to any liability under criminal and civil fraud statutes.

7 C.F.R. § 795.24, **Relief,** provides:

If a producer relied on a county committee and/or State committee "person" determination for a crop year and higher reviewing authority makes a more restrictive determination, the Deputy Administrator may grant relief only for such crop year if the producer was not afforded an opportunity to exercise other alternatives with respect to the producer's farming operation and the program provisions and the county committee has determined that the producers acted in good faith based upon the original "person" determination.

### Analysis

At the outset, the court notes that the administrative record in this case consists of approximately 2,800 pages. While the record is indexed, many of the exhibits are handwritten. Notwithstanding this voluminous record, the party's parsimonious use of citations to that record has hindered the court's ability to effectively review that record. Many of the arguments advanced by each party indicate that the record supports their position, but contain no direct citation to the record. This practice is something akin to telling the court that "it's in there somewhere" and falls decidedly short of the court's expectations of counsel and the parties. In short, the task of sifting through the administrative record has essentially been relegated to the court.

Although the court has considered the entire record and all of the arguments raised by the parties, this memorandum and order will simply address the issues necessary to render the court's decision. Based upon the similarity of the arguments advanced by Bohm and Logan Farms, the court has unless otherwise noted considered their arguments simultaneously.

**Based upon the Secretary's delay in instituting this action, should he be estopped from demanding repayment of the funds at this point in time?**

■ Bohm argues that the Secretary's delayed review of a cumulative number of years of agricultural production, several years after completion of the crop years in question, is not authorized by the regulations nor by the law. Bohm contends that the Secretary's decision is patently unfair and unjust and that similar decisions have been deemed such by other courts. Bohm dedicates fourteen pages of his thirty-four page brief to this argument.

Based upon the government's delay in reviewing the manner in which he conducted business, and based upon his reliance each year on the government's apparent approval of the manner with which he conducted business, Bohm essentially seeks to estop the defendant from challenging the amount he was paid at this "late" date. Bohm contends that the delay in reviewing those payments is patently unfair and that the government should be estopped from asserting this challenge. Bohm appears to suggest that the government should be held to a one year statute of limitations: If the government does not challenge the manner with which Bohm conducted business prior to entering a new contract each year, the government should be precluded from mounting at a subsequent point in time an attack to the payments. In support of his position, Bohm cites *United States v. Lazy FC Ranch,* 481

F.2d 985 (9th Cir.1973).[8]

The defendant responds, arguing that his challenge to Bohm's receipt of payments is not untimely. The defendant contends that the reason for the delay in mounting this investigation is attributable to the fact that Bohm successfully secreted the true manner in which he was conducting business from the ASCS office. The defendant also denies that any advice or affirmative conduct by government agents in any way mislead Bohm. The defendant contends that Bohm's use of multiple entities to avoid the $50,000 limitation is the actual reason that Bohm's activities were not discovered earlier.

■ Although in 1973 the Ninth Circuit has held that estoppel may be applied against the government when it acts in either its sovereign or proprietary capacity, *see Lazy FC Ranch*, the limitations placed upon persons attempting to assert estoppel against the government have since been better defined. *See Board of County Com'rs of County of Adams v. Isaac*, 18 F.3d 1492, 1498 (10th Cir.1994) (since *Lazy FC Ranch* was decided, "the Supreme court has alerted the judiciary that equitable estoppel against the government is an extraordinary remedy."). Attempts to estop the government have generally been unsuccessful. While the Supreme Court has rejected the government's request for an across-the-board no-estoppel rule, *OPM v. Richmond*, 496 U.S. 414, 426, 110 S.Ct. 2465, 2472, 110 L.Ed.2d 387 (1990),[9] it is well settled that the government may not be estopped on the same terms as any other litigant. *Heckler v. Community Health Services*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). It is also clear that erroneous oral statements or mere negligent conduct by a government agent are insufficient to apply estoppel. *See, e.g.,*

*OPM*, 496 U.S. 414, 110 S.Ct. 2465 (erroneous advice given by government employee to a benefit claimant cannot estop the government from denying benefits not otherwise permitted by law).[10] Recently, the Tenth Circuit stated:

"Courts generally disfavor the application of the estoppel doctrine 'against the government and invoke it only when it does not frustrate the purpose of the statutes expressing the will of Congress or unduly undermine the enforcement of the public laws." *FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir.1994). Thus, "equitable estoppel against the government is an extraordinary remedy." *Board of County Comm'rs v. Isaac*, 18 F.3d 1492, 1498 (10th Cir.1994). "It is far from clear that the Supreme Court would ever allow an estoppel defense against the government under any set of circumstances. However, even assuming estoppel could be applicable, the Court has indicated that there must be a showing of affirmative misconduct on the part of the government." *Hulsey*, 22 F.3d at 1490 (citation omitted). "Affirmative misconduct is a high hurdle for the asserting party to overcome." *Id.* "Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact. Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct." *Isaac*, 18 F.3d at 1499 (citation omitted).

*In re DePaolo*, 45 F.3d 373, 376–377 (10th Cir.1995).

Assuming, *arguendo*, that the government may be estopped under some circumstances, Bohm has not demonstrated that the government should be estopped from recovering the overpayments in this case. Bohm cannot

---

**8.** Bohm candidly acknowledges, however, that the precedential value of the *Lazy F.C. Ranch* case "has recently been eroded somewhat" by subsequent cases.

**9.** In *OPM*, the court left "for another day whether and estoppel claim could ever succeed against the Government." 496 U.S. at 423, 110 S.Ct. at 2471.

**10.** In *OPM*, the court collects and discusses the history of cases in which parties have attempted

to assert estoppel against the government. Although the plaintiff's reliance on erroneous advice of a government employee ended in some unfortunate or harsh result for the plaintiff, the Supreme Court has consistently denied estoppel against the government. *See Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (government not estopped from denying insurance coverage even though its agent told farmer that his entire wheat crop qualified for insurance when it in fact was not.)

point to any affirmative conduct by the defendant to warrant estoppel. More importantly, the primary reason for any "delays" in discovering the overpayments appears to have been due to Bohm's own attempts to circumvent the relevant rules and regulations. Clearly, the plaintiff's own action cannot serve as a basis to estop the defendant.

Moreover, the regulations make it clear that determinations by the county or state committees are not final authority on any issue delegated to either committee. *See* 7 C.F.R. § 713.2;[11] *Knaub v. United States,* 22 Cl.Ct. 268 (1991). Therefore, the plaintiff's attempt to shift the blame to the defendant is largely unavailing.

Bohm's suggestion that the Secretary should be held to a one year statute of limitations is meritless for several reasons. According to Bohm's brief, the Secretary commenced its investigation in this matter in 1990. Bohm does not specifically argue, nor does it appear, that the defendant is barred from recovering the overpayments by the relevant statute of limitations. *See* 15 U.S.C. § 714b(c) (six year statute of limitations); *United States v. Tri–State Ins. Co. of Minnesota,* 946 F.2d 581 (8th Cir.1991), *cert. denied,* 503 U.S. 970, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992); *United States v. Batson,* 706 F.2d 657 (5th Cir.1983).

The court concludes that the government is not estopped from recovering the overpayments made to Bohm or Logan Farms.

**Was the Secretary's decision arbitrary, capricious or contrary to the law?**

Both Bohm and Logan Farms contend that the Secretary's decision was arbitrary, capricious and contrary to the law. Specifically, the plaintiffs contend that the Secretary's decision was deficient in failing to identify with specificity the factual or legal basis for his conclusions.

The plaintiffs also contend that the Secretary failed to apply any defined standard in concluding that the timing of custom farming payments from Logan Farms and others to Bohm constituted financing within the meaning of 7 C.F.R. § 795.16. The plaintiffs also

argue that the "financing rule" upon which the Secretary relied is without legal support, making his determination that Logan violated the rule arbitrary, capricious, an abuse of discretion, and contrary to the law.

The plaintiffs also contend that the Secretary impermissibly relied on the ASCS Handbook for State and County Operations (the Handbook) to reach the conclusion that they were liable for the overpayments. First, the plaintiffs argue that because the Handbook is not generally distributed to program participants, and because any rules found in the Handbook have not been published in the Federal Register or been subject to public comment, the Secretary cannot rely on those financing rules found in the Handbook to impose liability for the overpayments.

The Secretary responds, indicating that his decision clearly states its findings and is amply supported by the record. The Secretary contends that the facts contained in the administrative record clearly demonstrate that his decision was not arbitrary, capricious or contrary to the law. The Secretary contends that his decision is "well founded in statutory and regulatory law" and that the Handbook provisions, "which may have been utilized at different stages in this determination are merely interpretive, not legislative." Therefore the Secretary argues that the plaintiffs' analysis of this issue is not complete or accurate.

### Analysis

■ The court, having carefully reviewed the administrative record, concludes that the Secretary's decision was not arbitrary, capricious or contrary to the law. Based upon the record presented, the Secretary could have reasonably concluded that the Bohm, Logan Farms, and the other persons for each of the years in question did not qualify as separate persons under the applicable regulations.

Decocted to its simplest form, the Secretary found that Bohm was not a custom farmer within the meaning of the regulations. The Secretary essentially found that Bohm was instead a sharecropper. Bohm's conten-

---

**11.** "In 1989, C.F.R. chapter 7, part 713 was redesignated and now appears at 7 C.F.R. § 1413 (1994)." *Olenhouse,* 42 F.3d at 1566, n. 3.

tion that he was a custom farmer is undermined by several critical facts. First, it is apparently undisputed that Bohm performed substantial services for each of his clients, but would rarely receive payment until months after the services were performed or the supplies or products were delivered. In the alternative, clients would write Bohm a check at approximately the time the services or products were provided. However, Bohm would not cash that check until a substantial amount of time had passed. According to Bohm, the reason he held those checks for several months, usually until after the first of the year, was to defer the income until the following year. In addition, several of the checks paid to Bohm appeared to be backdated. Each of these circumstances or explanations are suspect.

■ The Secretary's determination that Bohm's practice of receiving payment constituted "financing" within the meaning of § 795.16 was a permissible interpretation of the evidence presented. The manner in which Bohm conducted business demonstrates that his relationship was more than that of a custom farmer. Based upon the administrative record, the Secretary could rationally conclude that Bohm either had a direct or indirect interest in the crops or that he granted financing to his customers by the manner in which he was paid. *Cf. Knaub,* 22 Cl.Ct. at 275; *Kumm v. United States,* No. 90–1280, 1991 WL 255443, 1991 U.S. Dist. LEXIS 16195, at *22 (D.D.C. Nov. 12, 1991) (DASCO's determination that payment deferral constitutes financing is clearly reasonable), *aff'd,* 995 F.2d 305 (D.C.Cir.1993). In either event, Bohm and his customers were not entitled to separate person status.

Nor was the Secretary required to accept Bohm's explanations for the manner in which he conducted business. In fact, there is evidence in the record to indicate that Bohm attempted to secret or shield the true nature and extent of his relationship with his "clients" from the defendant. These facts cast serious doubt on the credibility and veracity of Bohm and his customers. In any event, there is substantial evidence supporting the Secretary's decision.

As one specific example, it appears undisputed that Bohm's arrangement with Downs National Bank violated the relevant regulations. Bohm and Downs National Bank agreed that Bohm would receive two-thirds of the crop and government payments as compensation for his work. Bohm's brief does not attempt to squarely address this finding by the Secretary or in any way explain how this manner of conducting business was permitted under the relevant regulations.

Bohm attempts to address the Secretary's finding in as a whole, rather specifically address the numerous points identified by the Secretary as supportive of his position. Bohm's brief essentially asks the court to take on faith the factual assertions he advances in support of his position. Between pages twenty-two and twenty-eight of his brief, Bohm essentially argues that the manner in which he did business was reasonable and in no way violated the relevant regulations. This assertion is belied in part by Bohm's own brief. Bohm's brief essentially admits that his customers would sometimes grant a security interest or insurance in their crop in exchange for Bohm's willingness to delay receipt of payment for work performed. These arguments further demonstrate that Secretary's determination that Bohm was not a custom farmer was not arbitrary or capricious.

■ The plaintiffs' contention that the Secretary impermissibly relied on the ASCS Handbook is without merit. In *Olenhouse,* the Tenth Circuit described the significance of the Handbook:

County committees are guided in their application of program regulations by an ASCS Handbook distributed by the Secretary to individual state committees, which then make the Handbook available to local county committees. ASCS Handbook 5–PA (Rev. 7) (the "Handbook"). The Handbook is an internal reference for use by the state and county committees; it is not distributed to program participants generally. *See Jones v. Espy,* 1993 U.S. Dist. LEXIS 3285, 1993 WL 102641 (D.D.C. 1993) (not reported in F.Supp.) (discussing ASCS Handbook 5–CM, price support pro-

gram financing). Where instructions in the Handbook conflict with regulations, the regulations control. *Id.* (citing 7 C.F.R. § 713.2(b), (c)).

42 F.3d at 1568. In *Jones,* 1993 WL 102641, 1993 U.S. Dist. LEXIS 3285, the district court reversed the Secretary, finding that the sole basis for his decision was his reliance on rules gleaned from the unpublished Handbook.

In the case at bar, the administrative record sporadically contains excerpts from the Handbook. In contrast to *Jones,* the Secretary's decision in this is not based upon a rule solely appearing in the Handbook. Instead, his decision is rationally based upon the published regulations.

**Did the Secretary impermissibly saddle Logan Farms with the liability for the overpayments to persons with which it had no direct contact?**

In addition to the arguments advanced by Bohm, Logan Farms advances certain arguments that are unique to its position. Logan Farms contends that it should be considered a separate person from Bohm for purposes of the payment limitation regulations. Logan Farms contends that the custom farming regulation, § 795.16, deals only with the separate person status of the custom farmer, and does not prejudice that status for the recipient of the custom farming services. Logan Farms contends that even if § 795.16 is interpreted to combine a custom farmer and the recipient of custom farming services as a single person, the regulation does not authorize the combination of several recipients of custom farming services into a single person. Logan Farms contends that it is unfair and unreasonable to lump Logan Farms in with Smith, Shumate, Bank, Byrnes and Robert Bohm.

The government responds, arguing that its decision to impose liability upon Logan Farms was entirely consistent with the relevant regulations.

The short answer to Logan Farms' arguments is that the Secretary's determination is a permissible one under the relevant regulations. The regulations clearly contemplate the possibility of imposing joint and several liability for any excess above the statutory limitation upon two or more persons who are treated as one person. Because the court concludes that substantial evidence supports the Secretary's determination that Logan Farms was not separate from Bohm, the Secretary's imposition of joint and several liability was not inconsistent with the express terms of the relevant regulations.

IT IS THEREFORE ORDERED that the following motions are denied:

1. Motion for summary judgment of Logan Farms, Inc. (Dk. 24).

2. Motion for summary judgment [filed by Pete Bohm, d/b/a Bohm Farm and Ranch, Inc.] (Dk. 22).

3. Motion of the United States for Summary Judgment (Dk. 26).

IT IS FURTHER ORDERED that the decision of the Secretary is affirmed.