**Maurice D. MITCHELL, Sr., Plaintiff,**

v.

**Mike JOHANNS, Secretary of Agriculture in his official capacity, Defendant.**

**Marvin Mitchell and Marlene Mitchell, Plaintiffs,**

v.

**Mike Johanns, Secretary of Agriculture in his official capacity and the United States of America, Defendants.**

**Nos. 4:04 CV 90003(L), 4:04–CV–90128.**

United States District Court, S.D. Iowa, Central Division.

Nov. 15, 2005.

Gary L Hayward, United States Attorney, Des Moines, IA, for Department of Agriculture Sued as: Ann Venneman, Secretary of Agriculture in Her Official Capacity, Defendant.

David L Leitner, Leitner Law Office, Johnston, IA, for Marlene Mitchell, Marvin Mitchell, plaintiffs.

Peter C Riley, Riley Law Firm, Cedar Rapids, IA, for Maurice Mitchell, Sr., plaintiff.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

In 1998, the United States Department of Agriculture (USDA) found that Plaintiffs Maurice D. Mitchell, Sr., Marvin Mitchell, and Marlene Mitchell, together with Steve Agan and George Paul, devised a scheme to evade limitations placed upon the amount of farm program benefits they could receive from the federal government in 1997. All three Plaintiffs repaid the farm program benefits they had received for the years 1997 and 1998, as they were required to do under the applicable penalty regulation. In 2002, the USDA determined that the three Plaintiffs were jointly and severally liable for the farm program benefits received by Agan and Paul in the years 1997 and 1998. Having exhausted their administrative remedies, the Plaintiffs now appeal that determination.

## I. FACTS AND PROCEEDINGS

### A. *1998 and 1999 Administrative Proceedings*

In 1998, the Farm Service Agency (FSA) initiated administrative proceedings against Maurice Mitchell, Sr., and his son and daughter-in-law, Marvin and Marlene Mitchell, alleging that they participated in a scheme or device to evade FSA payment limitations for the year 1997. The FSA concluded the Mitchells did participate in such a scheme, along with Agan and Paul, who worked as contractors on the Mitchell's farm (Admin Rec. 1710–21). The FSA found that Maurice Mitchell, Sr., Marvin and Marlene Mitchell, Agan, and Paul had applied as five separate persons for FSA payment purposes, even though FSA records reflected that there were only two persons eligible for payments in 1996 (Admin Rec. 4, 1718; Appeal Rec. 12, 13). The FSA also found that the Mitchells did not actively engage in farming in 1997 despite collecting FSA payments for that year (Admin Rec. 1718, Appeal Rec. 9, 11, 17). The Mitchells appealed the decision to the USDA National Appeals Division (NAD), which upheld the findings against them (Appeal Rec. 13, 17). The Mitchells did not attempt to appeal the findings any further. As required under the relevant penalty regulation, 7 C.F.R. § 1400.5, the Mitchells repaid the FSA farm payments they had received in 1997 and 1998.[1]

### B. *2002 Proceedings*

In 2002, Marvin and Marlene Mitchell filed for bankruptcy. Apparently prompted by the bankruptcy proceedings, the Iowa State Committee of the USDA ("Committee") determined, on September

---

1. 7 C.F.R. § 1400.5 states:

(a) All or any part of the payment otherwise due a person on all farms in which the person has an interest may be withheld or be required to be refunded if the person adopts or participates in adopting a scheme or device designed to evade this part or that has the effect of evading this part. Such acts shall include, but are not limited to: (1) Concealing information that affects the application of this part; (2) Submitting false or erroneous information; or (3) Creating fictitious entities for the purpose of concealing the interest of a person on a farming application.

(b) If the Deputy Administrator determines that a person has adopted a scheme or device to evade, or that has the purpose of evading, the [relevant] provisions ... such person shall be ineligible to receive payments under the programs specified in § 1400.1 with respect to the year for which such scheme or device was adopted and the succeeding year.

18, 2002, that Marvin and Marlene Mitchell were jointly and severally liable for the repayment of the farm payments that Agan and Paul received in 1997 and 1998 (Appeal Rec. 26). The Committee made the same determination with respect to Maurice Mitchell, Sr. Brief of Maurice Mitchell, Sr. at 1.

The Mitchells appealed the September 18, 2002 decision to the National Appeals Division, which denied their appeals on the ground that the decisions were not appealable because joint and several liability is a matter of general applicability (Appeal Rec. 3). *See* 7 C.F.R. § 11.6(a)(2) ("The Director shall determine whether the decision is adverse to the individual participant and thus appealable or is a matter of general applicability and thus not subject to appeal.").

### C. *The Current Proceedings*

Maurice Mitchell, Sr. filed a Complaint (Clerk's No. 1) with this Court on January 5, 2004, seeking declaratory relief. Marvin and Marlene Mitchell also filed a Complaint with this Court on February 27, 2004, seeking declaratory relief and a refund of monies withheld from them, plus interest. Marvin and Marlene Mitchell also sought damages (Case No. 4:04–cv–90128). On April 27, 2004, the Court consolidated the two cases (Clerk's No. 7). On February 25, 2005, the Court ordered dismissal of the Mitchells' claim for monetary damages because none of the statutes waiving sovereign immunity permitted an award of monetary damages against the federal government (Clerk's No. 13). The Court did not dismiss the Mitchells' claims seeking declaratory relief. Maurice Mitchell, Sr. filed a brief with the Court on July 27, 2005, as did Marvin and Marlene Mitchell (Clerk's Nos. 21, 27). The Government filed a brief on August 24, 2005 (Clerk's No. 24). The Plaintiffs did not file a reply brief. The matter is fully submitted. *See* Local Rule 7.1(g) (allowing parties five days to file a reply brief).

### II. STANDARD OF REVIEW

Judicial review of a NAD decision is authorized under 7 U.S.C. § 6999, which states: "A final determination of the [National Appeals] Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5." Judicial review is also appropriate under the Administrative Procedure Act, 5 U.S.C. § 704.

An agency's interpretation of the statutes and regulations it administers is subject to *de novo* review, a standard under which the Court accords substantial deference to the agency's interpretation. *Patel v. Ashcroft*, 375 F.3d 693, 696 (8th Cir.2004) (citing *Regalado–Garcia v. INS*, 305 F.3d 784, 787 (8th Cir.2002)). The Court "will defer to an agency's interpretation of … a statute if that interpretation is consistent with the plain meaning of the statute or is a permissible construction of an ambiguous statute." *Coal. for Fair and Equitable Reg. of Docks on Lake of the Ozarks v. FERC*, 297 F.3d 771, 778 (8th Cir.2002) (citing *Escudero–Corona v. INS*, 244 F.3d 608, 613 (8th Cir.2001)), *cert. denied*, 538 U.S. 960, 123 S.Ct. 1749, 155 L.Ed.2d 511 (2003); *see generally Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Court also accords substantial deference to an agency's interpretation of its own regulations and will uphold that interpretation "unless it violates the Constitution or a federal statute, or unless the interpretation is 'plainly erroneous or inconsistent with the regulation.'" *Coal. for Fair and Equitable Reg. of Docks on Lake of the Ozarks*, 297 F.3d at 778 (quoting *Univ. of Iowa Hosps. and Clinics v. Shalala*, 180 F.3d 943, 950–51

(8th Cir.1999)); *see also Gardebring v. Jenkins,* 485 U.S. 415, 430, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988); 5 U.S.C. § 706(2)(B) & (C).

## III. LAW AND ANALYSIS

The Mitchells do not challenge the outcome of the 1998 and 1999 proceedings, and, as the Defendants note in their brief, the deadline for appealing those proceedings has passed. *See* 28 U.S.C. § 2401(a); *Spannaus v. U.S. Dep't of Justice,* 824 F.2d 52, 56 (D.C.Cir.1987). The Mitchells challenge only the finding, in 2002, that they are jointly and severally liable for debts incurred by Paul and Agan as a result of the 1998 and 1999 proceedings.

■ Under regulations promulgated by the USDA, parties may be held jointly and severally liable if they are considered to be "one person" under the regulatory scheme:

> If two or more individuals or entities are considered to be one person and the total payment received is in excess of the applicable payment limitation provision, such individuals or entities shall be jointly and severally liable for any liability that arises therefrom. The provisions of this section shall be applicable in addition to any liability that arises under a criminal or civil statute.

7 C.F.R. § 1400.7. The Mitchells argue that the five participants in the scheme— Maurice Mitchell, Marlene and Marvin Mitchell, Paul, and Agan—were not "one person" within the meaning of the term in 7 C.F.R. § 1400.7 and, therefore, cannot be held jointly and severally liable for one another's debts under the regulation. The term "person" is defined in 7 C.F.R. § 1400.3, which the Court sets forth below:

> Person. (1) A person is:
>
> (i) An individual, including any individual participating in a farming operation as a partner in a general partnership, a participant in a joint venture, or a participant in a similar entity;

> (ii) A corporation, joint stock company, association, limited partnership, limited liability partnership, limited liability company, irrevocable trust, revocable trust combined with the grantor of the trust, estate, or charitable organization, including any such entity or organization participating in the farming operation as a partner in a general partnership, a participant in a joint venture, a grantor of a revocable trust, or as a participant in a similar entity;
>
> (iii) A State, political subdivision, or agency thereof.

7 C.F.R. § 1400.3 (def. of *person* (1)). The regulation goes on to explain that, in order to be considered a separate person, an individual must meet certain requirements:

> (2) In order for an individual or entity, other than an individual or entity that is a member of a joint operation, to be considered a separate person for the purposes of this part, in addition to other provisions of this part, the individual or entity must:
>
> (i) Have a separate and distinct interest in the land or the crop involved;
>
> (ii) Exercise separate responsibility for such interest; and
>
> (iii) Maintain funds or accounts separate from that of any other individual or entity for such interest.

7 C.F.R. § 1400.3 (def. of *person* (2)). The Government contends that, in 1999, the NAD Hearing Officer found, and the NAD Director Review affirmed, that the Mitchells were not separate persons because they did not maintain separate funds, as required under subpart iii, and that this finding should be afforded res judicata in the current proceedings. According to the Government, these findings authorize the imposition of joint and several liability against the Mitchells.

In Marvin and Marlene Mitchell's appeal from the initial FSA decision, the Hearing

Officer concluded that Marvin and Marlene Mitchell, together with Maurice Mitchell, Sr., Agan, and Paul, bought and sold chemicals among each other to create the appearance that each of their balances on loans, issued by the lender FarmPro, were reduced to the FarmPro loan limit. The Hearing Officer observed that Farm-Pro had required personal guarantees for all of the loans from each of the five borrowers, "suggest[ing] a business relationship between these persons close enough to warrant recognition by [Farm-Pro]." These facts led the Hearing Officer to find that "the loan accounts of these persons were not separate and distinct from each other." Admin. Rec. at 1729. Thus, the Hearing Officer concluded, the parties were not separate persons under 7 C.F.R. § 1400.3(b) (def. of *person* (2)(iii)) because they did not maintain funds or accounts separate from one another.[2]

In the NAD Review of the proceedings against the Mitchells, the NAD Director reviewed the requirements in 7 C.F.R. § 1400.3(b) (def. of *person* (2)) and concluded that the Hearing Officer did not err in finding that the parties involved in the loan scheme were not separate persons under the regulations because they did not maintain separate funds or accounts. Appeal Rec. at 12, 18. The Director also concluded that the Mitchells "did not provide capital from funds that were separate and distinct." The Director continued: "The FarmPro loans were used interchangeably on all the farming operations in that it was one farming operation and all the individual[ ]s have an interest." Appeal Rec. at 12, 18. While these findings were used to support the NAD's determination that the individuals were not

"actively engaged in farming," *see* 7 C.F.R. § 1400.201, nothing in the regulations indicates that the same "person" determination could not be used to support a finding of joint and several liability under 7 C.F.R. § 1400.7.

The Plaintiffs suggest that subpart B of 7 C.F.R. § 1400, located at 7 C.F.R. § 1400.100–1400.109, should guide the Court's determination of who constitutes "one person." The provisions in subpart B delineate when a partnership, company, corporation, joint operation, trust, estate, husband and wife, minor, or government entity is considered to be one person under the regulations. 7 C.F.R. § 1400.101–109. The Plaintiffs argue that, because they do not fall into any of these categories, they are not "one person" and therefore cannot be subject to joint and several liability.

The only case that the Court is aware of with similar facts is *Bateman Co. v. United States Dep't of Agric.*, 123 F.Supp.2d 625 (M.D.Ga.2000). In *Bateman*, the owners of two farms received disaster relief funds, despite the fact that they leased their land out and were not engaged in any farming operations. The FSA attempted to collect the disaster relief funds that had been erroneously disbursed and concluded that the two farm owners were jointly and severally liable for repayments on the funds. *Id.* at 628. The court found that imposition of the joint and several liability provision was appropriate because the owners applied for federal assistance on the same application as the lessee, becoming "one, joint entity requesting federal funding." *Id.* at 636. Thus, the court concluded, the farm owners did not "[e]x-

2. The Court notes that the Mitchells acknowledged this finding in their post-hearing brief during their appeal to the National Appeals Division, which stated: "The Agency found that neither Maurice Mitchell, Marvin Mitch-ell, Marlene Mitchell, George Paul, or Steven Agan were separate 'persons.' " (Admin Rec. 1773). In their appeal, the Mitchells argued that they were separate persons (Admin Rec. 1774). Their appeal was denied.

ercise separate responsibility" for the farming interests and were not "separate persons" under 7 C.F.R. § 1400.3(b) (def. of *person* (2)(ii)). *Id.* Because they were not separate persons under 7 C.F.R. § 1400.3(b), they could be held jointly and severally liable for one another's debts. *Id; see also Logan Farms, Inc. v. Espy,* 886 F.Supp. 781, 793 (D.Kan.1995) (construing 7 C.F.R. § 795,20, another USDA regulation allowing for the imposition of joint and several liability, and concluding that the NAD did not err when it determined farm owner and lessee were "one person").

The Mitchells attempt to distinguish *Bateman* on the ground that, unlike the plaintiffs in that case, the Mitchells were prejudiced by the amount of time that lapsed between the initial finding of liability and the later finding of joint and several liability. In *Bateman,* the FSA waited nearly twenty-one months before notifying the plaintiffs of the initial adverse decision that had been rendered against them and declaring them ineligible for benefits they had already received. *Bateman,* 123 F.Supp.2d at 635. The *Bateman* plaintiffs challenged the decision on the basis that the FSA had violated 7 U.S.C. § 6994, which provides: "Not later than 10 working days after an adverse decision is made that affects the participant, the Secretary shall provide the participant with written notice of such adverse decision and the rights available to the participant under this subchapter or other law for the review of such adverse decision." 7 U.S.C. § 6994. The court concluded that although the FSA had not notified the plaintiffs of the decision within ten days, as required by the statute, there was no legal basis for dismissing the case based on the FSA's failure to follow the ten-day rule. Moreover, the court stated, the plaintiffs were not prejudiced because the FSA's delay allowed them to keep the improperly obtained money for an extended period of time without paying interest. *Bateman,* 123 F.Supp.2d at 635.

In the current case, the Mitchells do not contend that the ten-day provision in 7 U.S.C. § 6994 applies to the finding of joint and several liability. Instead, the Mitchells argue that they were prejudiced by the significant amount of time that elapsed between the initial finding of liability, in 1998, and the finding of joint and several liability in 2002. They also contend that they were prejudiced by the NAD Director's determination that they could not appeal the imposition of joint and several liability.

The Mitchells do not point to any statutory or judicial authority indicating that the USDA's interpretations of its own regulations violated a federal statute or the federal Constitution. In light of the NAD determination, in 1999, that the Mitchells acted as "one person" when they rearranged the FarmPro loan funds, joint and several liability is appropriate under 7 C.F.R. § 1400.7. The Court is not persuaded by the Mitchells' argument that only people who fall into the categories enumerated in subpart B of 7 C.F.R. § 1400 may be considered "one person" for purposes of joint and several liability. Nothing in the regulation indicates that subpart B is comprehensive in that respect. Given the substantial deference that the Court must afford the agency's interpretation of the regulations, the Court cannot conclude that the Agency's interpretation was plainly erroneous or inconsistent with the regulation.

 Similarly, the Court must defer to the NAD Director's determination that the decision to impose joint and several liability was "a matter of general applicability" and therefore not appealable. The Court is not aware of any authority indicating that a finding of joint and several liability is not a matter of general applica-

bility, and the Plaintiffs do not point to any such authority. Nor is the Court convinced that any prejudice caused by the delay in notifying the Mitchells of the joint and several liability was substantial enough to warrant overturning the NAD Director's determination. Marvin and Marlene Mitchell do not state how they were prejudiced by the delay, and Maurice Mitchell, Sr., states only that his ability to seek contribution from Marvin and Marlene Mitchell, who have filed for bankruptcy, has been prejudiced. While the Court is sympathetic to the Mitchells' frustration at being notified of their joint and several liability several years after the initial finding that they improperly received farm payments, it would be inappropriate for the Court to overrule the NAD Director's determination in the absence of any authority indicating that the NAD decision violated the federal Constitution or a federal statute, or that the decision was plainly erroneous or inconsistent with the applicable regulations. *See Coal. for Fair and Equitable Reg. of Docks on Lake of the Ozarks,* 297 F.3d at 778. Furthermore, the regulation imposing joint and several liability predates the initial finding of liability against the Mitchells, and they arguably could have anticipated that the regulation would apply to them.

For the reasons discussed above, the NAD Director's determination that Maurice Mitchell, Sr., Marvin Mitchell, and Marlene Mitchell are jointly and severally liable for any liability arising from the 1998 and 1999 proceedings is AFFIRMED.

IT IS SO ORDERED.