**Dolores GOLIGHTLY, et al., Plaintiffs,**

v.

**Clayton YEUTTER, Defendants.**

**No. CIV 90–1272 PHX RCB.**

United States District Court,
D. Arizona.

Sept. 3, 1991.

Jack E. Brown, Hal Michael Clyde, Brown & Bain PA, Phoenix, Ariz., Alan R. Malasky, Robin Rowland, Arent Fox Kintner Plotkin & Kahn, Washington, D.C., for plaintiffs.

Michael R. Arkfeld, U.S. Atty.'s Office, Phoenix, Ariz., for defendants.

## AMENDED ORDER

BROOMFIELD, District Judge.

Plaintiffs move for summary judgment declaring the plaintiffs separate "persons" for purposes of the Payment Limitation Regulations, 7 C.F.R. § 795, applicable to

Price Support Production and Adjustment programs promulgated under the Agricultural Act of 1949, as amended, 7 U.S.C. § 1421 *et seq.* Defendant responded to the motion and filed a cross-motion for summary judgment affirming the administrative decision or, in the alternative, remanding the matter for further administrative action. Both motions have been fully briefed and the court has heard oral argument.

## I. FACTS

This action arises from a decision of the Department of Agriculture's Deputy Administrator for State and County Operations (DASCO) dated March 30, 1990 denying plaintiffs' appeal of an administrative determination that plaintiffs Julie Golightly and Dolores Golightly, general partners of Tiffany Farms, and Regis Land Corporation ("Regis"), doing business as Tonopah Ginning Company, among others, constituted one "person" under section 1001 of the Food Security Act of 1985, *as amended,* 7 U.S.C. § 1308(1). That provision limits the amount of cash subsidies any "person" may receive annually through programs established under the Agricultural Act of 1949, 7 U.S.C. § 1421, to $50,000 annually. The decision limited to $50,000 per year for the years 1987 and 1988 the total cash subsidies plaintiffs could receive under the commodities price support programs established by 7 U.S.C. § 1421 and the implementing regulations, 7 C.F.R. Part 713 (1988). Under those provisions, cash subsidies were paid to commodities producers such as plaintiffs in exchange for their agreement not to plant a specified percentage of their crop acreage.

Plaintiff Julie Golightly is the daughter of Dolores Golightly, her general partner in Tiffany Farms, and J.L. Golightly, Jr. Dolores Golightly and J.L. Golightly, Jr. were divorced prior to the period relevant to this action. In 1987 and 1988, Dolores Golightly and J.L. Golightly, Jr. were each fifty percent shareholders in Regis Land Corporation. Dolores Golightly leased land during those years to Tiffany Farms. J.L. Golightly, Jr. also leased land to three oth-

er entities: (1) Salome Road Farms, in which he was one of three general partners in 1987 and one of two general partners in 1988; (2) Reed Farms, a partnership of two unrelated individuals; and (3) Vicky Ann Olson, another daughter of Dolores Golightly and J.L. Golightly, Jr.

In operating its primary asset, Tonopah Ginning Company, Regis offered financing to cotton producers in return for the producers' agreement to gin their cotton at the company's Tonopah Gin. Offering producers financing as an incentive to gin their cotton at a particular gin is a common practice of cotton gins doing business in Arizona. In exchange for financing, the producers executed promissory notes to Regis and pledged their crops as collateral, which was the common financing method employed by Arizona cotton gins. Regis in turn borrowed the money for financing the producers' operations in 1987 and 1988 from United Bank in return for a promissory note for each year and a pledge of Regis's assets, which included the producers' promissory notes. The aggregate amount of financing Regis provided to all producers in 1987 was $2,398,500 and in 1988, $2,875,000. Regis provided Tiffany Farms with financing of $243,000 in 1987 and $350,000 in 1988. Regis also provided such financing to Salome Road Farms, Reed Farms and Vicky Ann Olson, as well as to any other producer using the Tonopah Gin.

## II. PROCEDURAL HISTORY

The Agricultural Stabilization and Conservation Service ("ASCS") administers the subsidy program at issue. 7 U.S.C. § 1444-1; 7 C.F.R. § 713.2. The Maricopa County ASC Committee ("COC") initially determined on the basis of Farm Operating Plans submitted by the producers that Regis was one "person" for payment limitations purposes, Tiffany Farms was two persons, Salome Road Farms was three persons in 1987 and two in 1988, Reed Farms was two persons and Vicky Ann Olson was one person. In 1989, the COC's determination was subjected to an audit by the Department of Agriculture's Office of the Inspector General ("OIG"). The OIG deter-

mined that the financing arrangements among these entities violated certain financing rules and recommended that all nine entities be treated as one "person" for payment limitations purposes.

The COC accepted that recommendation and notified the farm operators on June 27, 1989 that they would be required to repay $525,619.34 in alleged overpayments. Subsequently, however, in a memorandum to the Arizona State ASCS Committee ("STC"), the COC recommended that DASCO relieve the producers from this penalty on the grounds that the producers acted in good faith in preparing their Farm Operating Plans, and that the COC was partially responsible for not correctly applying the financing rules. The STC agreed with COC's recommendation and forwarded the COC's memorandum to DASCO with the STC's own concurring memorandum. The producers pursued an administrative appeal of DASCO's decision. A hearing was held on September 29, 1989 and the parties also were allowed to submit a post-hearing memorandum, which they filed on December 7, 1989.

DASCO's decision on appeal dated March 30, 1990 affirmed its prior determination that Regis, Reed Farms, Salome Road Farms, Tiffany Farms and Vicky Ann Olson constituted one "person" for payment limitations purposes in 1987 and that all except Salome Road Farms, which was financed directly by United Bank in 1988, constituted one "person" in 1988. DASCO concluded that the financing arrangements between Regis and the other entities:

> resulted in a failure to maintain a separate and distinct interest in the crop or the land, separate responsibility for such interest and separate responsibility for payment of the cost from a fund or account separate from that of any other individual or entity as required by 7 CFR § 795.3. Additionally, all capital and operating funds for the partnerships were being obtained through the loans from Regis using the partnerships' crops as security rather than contributions by the individual members as required by 7 CFR § 795.7.

Record at 3. The decision nevertheless granted relief from the penalty assessed against Reed Farms, Salome Road Farms and Vicky Ann Olson in 1987 and against Reed Farms and Vicky Ann Olson in 1988 on the ground that they had disclosed on their farm operating plans that financing would be provided by Tonopah Ginning Company.

Such relief was denied to Tiffany Farms and Regis because they did not similarly disclose the financing arrangements. The decision notes first that Tiffany Farms' farm operating plans for 1987 and 1988 stated only that they would obtain "bank financing," rather than financing by Regis or Tonopah Ginning Company. Second, the farm operating plans indicated Tiffany Farms was a two-person partnership but only Julie Golightly signed the promissory notes and security agreements, which DASCO interpreted as indicating Tiffany Farms actually was a sole proprietorship.

## III. STANDARD OF REVIEW

The scope of the court's review is determined by the Administrative Procedure Act, 5 U.S.C. § 706, which provides that the court may set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Ninth Circuit interprets the arbitrary and capricious standard as limiting the reviewing court to deciding whether the agency made a "clear error of judgment" or the agency decision "was based upon consideration of the relevant factors." *U.S. v. Alpine Land and Reservoir Co.*, 887 F.2d 207, 213 (9th Cir.1989).

The court must defer to an agency's determination where Congress has granted the agency broad discretion in interpreting the applicable statute. *National Medical Enterprises, Inc. v. Sullivan*, 916 F.2d 542, 546 (9th Cir.1990). The statute imposing payment limitations grants the secretary authority to issue regulations defining a "person" under the statute and to establish rules for "a fair and reasonable application" of the payment limitations. 7 U.S.C. § 1308(5)(A). The discretion accorded the agency by this provision is sufficiently broad to require the court to defer to the agency's interpretations of the statute. An agency's interpretation of its own regulations must be granted even greater deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Furthermore, such deference extends to " 'merely intra-agency, non-public guidelines ... as long as they are a reasonable interpretation' of applicable regulations and statutes." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 370 (9th Cir.1989). In addition, the court is required to give conclusive effect to the agency's factual determinations in this case, as long as they were "officially determined in conformity with the applicable regulations...." 7 U.S.C. § 1385 (precluding review of agency's determination of facts "constituting the basis" for payments).

## IV. ANALYSIS

DASCO determined that the arrangement by which Regis financed Tiffany Farms and the other producers violated 7 C.F.R. § 795.7:

> Based on their interests as individual landowners, as joint owners of Regis and as partnership members Dolores Golightly and J.L. Golightly, Jr., had an interest in the crops and the land and provided financing through Regis. We have determined that this arrangement resulted in a failure to maintain a separate and distinct interest in the crop or the land, separate responsibility for such interest and separate responsibility for payment of the cost from a fund or account separate from that of any other individual or entity.

Record at 3. Plaintiffs contend that DASCO's decision was arbitrary and capricious because it ignored the agency's own regulations and the record evidence in the case. In particular, plaintiffs argue that the "financing prohibition" upon which DASCO based its determination that plaintiffs constituted one "person" is unsupported by agency regulations. Plaintiffs further con-

tend that, even if the prohibition were established, DASCO's determination ignored record evidence that Regis did not have any interest in the land that its shareholders leased to the producers.

In addition, plaintiffs assert that DASCO failed to follow its own regulations and ignored record evidence in refusing to apply asserted exceptions to such a financing prohibition. First, plaintiffs argue that even if Regis had an indirect interest in the land, Regis was eligible for the exception provided commercial credit institutions in the ASCS Handbook. Alternatively, plaintiffs contend that if the shareholders of Regis, rather than Regis, were found to have provided the financing, the exception for financing by family members in 7 C.F.R. § 795.4 and the ASCS Handbook should apply. Plaintiffs further argue that DASCO ignored recommendations of the COC and STC and acted arbitrarily and capriciously in providing relief from the penalty to some producers and not to plaintiffs, despite the absence of any real distinction between them.

### A. Validity of "financing prohibition"

■ Plaintiffs challenge the validity of the "financing prohibition" on the grounds that no such prohibition appears in the statute or in the official regulations, including the regulation defendants cite as authority, 7 C.F.R. § 795.3. Plaintiffs deny that such a prohibition can be "gleaned" from 7 C.F.R. § 795.3. Plaintiffs also contend that the ASCS Handbook defining the financing prohibition is entitled to no deference because it is a purely internal agency document, which was never made public and which is therefore not binding on the plaintiffs. Plaintiffs also argue that the prohibition did not appear in the handbook until February 1988, although they acknowledge that another internal agency document, Notice CM–75, issued December 1986, contained a similar financing prohibition that became effective on March 1, 1987.

Plaintiffs may be correct that the ASCS Handbook was not "legally binding" on them as would be officially promulgated agency regulations. In addition, DASCO's March 30, 1990 decision does not expressly indicate any reliance on the ASCS Handbook in its determination that Regis's financing arrangement with the producers violated section 795.3. Rather, DASCO states its conclusion in language that closely tracks the language of the regulation. Plaintiff has argued, however, that DASCO's decision failed to follow the agency's own regulations. The court must therefore decide whether DASCO's decision reflects a reasonable interpretation of the regulation. *Washington Crab Producers, Inc. v. Mosbacher,* 924 F.2d 1438, 1441 (9th Cir.1991). In doing so, the court must consider with deference the financing prohibition set forth in the ASCS Handbook as the agency's own interpretation of section 795.3. *Udall,* 380 U.S. at 16, 85 S.Ct. at 801.

The ASCS Handbook defines the "financing prohibition" as follows:

Any individual or entity providing financing shall be considered as 1 "person" with the individual or entity for whom financing is provided if the individual or entity providing the financing has any interest either DIRECTLY or INDIRECTLY in either of the following:

A  Any crop on the farm by doing one of the following:

1  Taking any risk in producing the crop.

2  Sharing in the proceeds of the crop.

3  Granting or guaranteeing the financing of the crop.

Defendant asserts that under its financing arrangement with the producers, Regis violated this section of the financing prohibition in all three respects in that it took a risk in producing the crop, shared in crop proceeds and granted the crop financing. Plaintiffs do not attempt to controvert the assertion that, absent some applicable exception to this rule, the Handbook's interpretation of section 795.3 would result in a finding that plaintiffs were one "person."

Plaintiffs contend, however, that even if such a prohibition could be found in section 795.3, section 795.7 provides an exemption for partnerships such as Tiffany Farms from the provisions of section 795.3. De-

fendant has not responded to this argument. DASCO determined that this exception would not apply because the partners did not qualify for the partnership exception:

[A]ll capital and operating funds for the partnerships were being obtained through the loans from Regis using the partnerships' crops as security rather than contributions by the individual members as required under 7 C.F.R. § 795.7.

Record at 3.

The court must give conclusive effect to DASCO's factual determination that the partnerships were funded entirely by the Regis loans and not by individual members' contributions. 7 U.S.C. § 1385. Section 795.7 requires that, to be considered as a separate person, each member of a partnership must contribute to the joint operation commensurate with its share in the proceeds. If the contribution is in capital, the individual partner may borrow his or her contribution, but a loan to the joint operation does not qualify. 7 C.F.R. 795.7. Thus, neither Julie Golightly nor Doris Golightly may rely upon the loan by Regis to Tiffany Farms to claim an exemption from the financing prohibition under section 795.7.

B. *Exception for financing institutions*

■ Plaintiffs also contend that, even if the financing prohibition applies, Regis should qualify for the exemption from such prohibition provided in the Handbook for "[i]nstitutions established to provide commercial credit to individuals or entities." ASCS Handbook 5–CM (Rev. 1), Exhibit 2, Attached to Plaintiffs' Reply as Exhibit B. DASCO determined that Regis did not qualify for the exception because it "was not organized as a bank or other lending institution established to provide commercial credit." Record at 3.

Plaintiffs contend that this exception should apply to Regis, because financing producers' crops was integral to its cotton ginning business as it is for all cotton gins. On that basis, plaintiffs argue that Regis was "established as a lending institution to provide commercial credit," Motion at 23, and that Regis is "in the business of providing commercial credit." Reply at 9. Defendant asserts that the agency has a "bright line rule" that limits application of this exception to "lenders in the business of banking." Plaintiffs note that neither the regulations nor the Handbook state that the exception is limited to institutions "in the business of banking." Moreover, plaintiffs argue that if such a bright line rule existed, cotton growers could not rely upon cotton gins for financing without jeopardizing their farm program benefits.

DASCO's interpretation of the exception as limited to banks and other lending institutions does not appear necessarily to be at odds with the payment limitation statute, regulations or the Handbook. Nevertheless, defendant does not provide any evidence that the agency has indeed established a bright line rule limiting this exception to institutions "organized as a bank or other lending institution." Defendant cites no written interpretation, not even any unpublished, intra-agency guidelines, establishing such a rule. Thus, the "bright line rule" appears to be no more than post-hoc rationalization of DASCO's application of the financing prohibition in this case, rather than an official agency rule or guideline.

The rationale defendant offers for distinguishing between financing provided by cotton gins and financing by banks or other lending institutions is that financing is merely incidental to the business of a cotton gin. Thus, a cotton gin is not "established to provide commercial credit." ASCS Handbook 5–CM (Rev. 1), Ex. 2. Plaintiffs respond that financing actually is an integral part of the cotton ginning business, because no cotton gin could compete with other gins in obtaining producers' ginning business without offering to finance their crops.

Even if financing were only an "incidental" part of the cotton gin business as defendants contend, that fact alone would not necessarily lead to the conclusion that cotton gins provide financing in something less than arm's-length transactions and should therefore result in a finding that the

cotton gin and the producer are one "person" for payment limitations purposes.

Furthermore, as plaintiff argues, any cotton gin providing financing would fall into the financing prohibition unless the exception for commercial lenders applied. Conceivably, all entities that obtained financing from a cotton gin could be considered one "person" with the cotton gin. Thus, a "bright line rule" limiting the exception to banks and other lending institutions might have far-reaching effects on the way in which cotton gins do business. Yet, defendant has not shown that the agency actually has promulgated such a rule, much less that it did so with due consideration for its effects. The court will therefore not defer to DASCO's determination that only banks or other lending institutions qualify for the exception from the financing prohibition that is provided for financial institutions.

Defendant attempts to distinguish Regis from other cotton gins in that Regis's shareholders leased land to the producers as well as providing financing for their crops. Such a distinction would not be relevant to any truly bright-line rule that denies the exception to any lender but a bank or other lending institution. In addition, absent an action to pierce the corporate veil, the corporate form under which Regis provided financing must be honored. The leasing activities of Regis's shareholders should therefore not be relevant to whether the corporation is entitled to the commercial lender exception.

Plaintiffs have shown that J.L. Golightly, Jr. and Dolores Golightly were not married during the relevant period. Additionally, each owned half of the shares in Regis; thus, neither Dolores nor J.L. Golightly had a controlling interest in the corporation such that the corporation might be considered that person's alter ego. As plaintiffs argue, DASCO appears to have misunderstood or ignored those facts in determining that, because Regis' shareholders leased land to the producers, Regis and its shareholders were one "person," the equivalent of piercing the corporate veil for purposes of the payment limitations.

## C. *Equity of awarding partial relief*

DASCO exercised its discretion under 7 U.S.C. § 1441–1(h)(1) and 7 C.F.R. 790.2 to provide relief for some of the parties affected by its determination that Regis and the entities receiving financing from Regis were one "person." DASCO determined that the partners of Reed Farms, Salome Farms and Vicky Ann Olson would be allowed to retain their status as separate persons because they adequately disclosed their financing arrangements with Regis by indicating on the farm operating plans that financing would be provided by Tonopah Ginning Company. Record at 3–4.

DASCO withheld such relief from plaintiffs on the ground that the farm operating plan submitted by Tiffany Farms failed to similarly disclose its financing arrangements with Regis, indicating instead that it would obtain "bank financing." Record at 4. The plan also indicated Tiffany Farms was a "two-person partnership"; yet, only Julie Golightly executed the financing agreements. DASCO interpreted Julie Golightly's sole execution as indicating Tiffany Farms was actually being operated as a sole proprietorship.

The statute establishing the payment program grants the agency discretion to make payments despite a producer's failure to comply fully with program requirements if doing so would be "equitable in relation to the seriousness of the failure." 7 U.S.C. § 1444–1(h)(1). Under the regulations implementing this statute, relief may be provided only to producers who "made a good faith effort to comply fully with the terms and conditions of the program and rendered substantial performance." 7 C.F.R. § 791.2. The regulations also allow relief for non-compliance that results from a producer's good-faith reliance on the action or advice of a county or state committee representative "to the extent [such relief] is deemed desirable in order to provide fair and equitable treatment." 7 C.F.R. § 790.2.

■ Defendant argues that the agency's exercise of its discretion under these provisions is beyond judicial review because the

provisions establish no objective standards for evaluating agency action. *See Pope v. United States*, 9 Cl.Ct. 479, 485 (1986). Plaintiffs contend that DASCO's discrimination between plaintiffs and the other defendants was not grounded on a rational basis and thus was arbitrary, capricious and an abuse of discretion. The court agrees with plaintiffs that where an agency discriminates among similarly situated producers under these provisions, the agency's discretion is circumscribed by the requirement that some reasonable basis be shown for such discrimination. *See Hilo Coast Processing Co. v. United States*, 816 F.2d 629, 634 (Fed.Cir.1987) (holding that where Congress expressed intent to provide a substantially equal level of support for all sugar cane crops, Secretary's singling out plaintiffs for "special and seemingly unfair treatment" violated Congress's intent to provide "fair and equitable treatment" and thus was arbitrary, capricious and an abuse of discretion).

Plaintiffs argue that Julie Golightly's execution of the Tiffany Farms financing agreements has no significance in determining whether the Tiffany Farms partners acted in good faith because one partner's execution of the agreements is sufficient to bind the partnership. In addition, only one partner of Reed Farms executed the financing agreement for that partnership. Yet, DASCO offered relief to Reed Farms and not to Tiffany Farms. The court agrees with plaintiffs that Julie Golightly's execution of the financing agreements is an insufficient basis for a determination of good faith and DASCO abused its discretion to the extent that its determination is based on this fact.

DASCO's refusal to grant relief to Tiffany Farms also was based upon the description in the partnership's farm operating plan that its financing would be obtained through "bank financing" rather than specifically stating, as had the other producers, that financing would be provided by Tonopah Ginning Company. In deciding that this difference justified offering relief to the other producers but not to Tiffany Farms, DASCO appears to have overlooked or ignored the opinion of the COC that all of the producers responded to the questions asked on the farm operating plan to the best of their abilities and that they were not trying to circumvent the rules concerning the financing prohibition. Record at 109.

Furthermore, whether Tiffany Farms indicated financing would be provided by a bank or by Tonopah Ginning Co. would not have affected the COC's decision regarding limitations on benefits at that time because the COC did not limit the benefits of any of the entities that did show Tonopah Ginning Co. financing. Thus, DASCO's assumption that Tiffany Farms purposely indicated bank financing rather than financing from Tonopah Ginning Co. in an effort to avoid the payment limitations provisions is not reasonable and does not provide a rational basis for denying Julie Golightly and Dolores Golightly the relief that DASCO provided the other producers.

In sum, the court finds that DASCO's determination that the Regis financing arrangement was prohibited by the financing prohibition described in the ASCS Handbook was not arbitrary and capricious. However, the court finds DASCO's determination that the exception for financial institutions applies only to banks and other lending institutions to be without basis in agency statutes, regulations or any official interpretation of either. Thus, DASCO's refusal to apply the exception for financing institutions to Regis was arbitrary and capricious. Furthermore, DASCO abused its discretion in relieving all producers except Tiffany Farms from the penalty because no rational basis existed for such discrimination.

IT IS ORDERED granting plaintiffs' motion for summary judgment (Doc. No. 8).

IT IS FURTHER ORDERED denying defendant's cross-motion for summary judgment or for remand (Doc. No. 19).