**BATEMAN COMPANY, INC. and Valley View Farms, Inc., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.**

**No. 5:99–CV–378–1(WDO).**

United States District Court, M.D. Georgia, Macon Division.

Dec. 14, 2000.

---

626

Jerry A. Lumley, Mr., Howard Jerome Strickland, Mr., Macon, GA, for Bateman Company, Inc., plaintiffs.

Melanie D. Wilson, Ms., Macon, GA, for U.S. Department of Agriculture, defendants.

## ORDER

OWENS, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. This case involves federal deficiency and disaster relief funds the Defendant claims should be reimbursed as they were erroneously paid to Plaintiffs. The Plaintiff brought this suit to prevent the Defendant from collecting any amounts previously paid. There were originally two cases dealing with the transactions that are the subject matter of this litigation.[1] This Court determined at the oral argument hearing and later in a written order that the two cases would be decided together as they concern the same subject matter and interested parties and thus are inextricably intertwined. Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure the two cases were combined and will be adjudicated as one case.

---

1. The original cases were styled as follows: *Bateman Company, Inc. v. USDA*, 5:99–CV–378–1 and *Valley View Farms, Inc.*, 5–99–CV–379–2.

## I. Factual and Procedural History

The following is an account of the facts taken directly from the administrative record and briefs of both sides of this litigation and does not represent independent findings of fact by this Court except where specifically indicated.

Plaintiff Bateman Company, of which Oliver Bateman is the president, is the landlord of one of the farms that is the subject matter of this litigation. The second farm is owned by Valley View Farms. Both Bateman Company and Valley View Farms leased the farms to John Shaw and his family on a cash basis. In 1993, when John Shaw was unable to pay his rent on the farms, he sought assistance from his local Farm Service Agency ("FSA") office. Shaw applied for relief through the 1993 Acreage Reduction Program and the 1993 Disaster Benefits Program. He sought to use the funds received from these programs to pay his rent to Bateman Company and Valley View Farms.

In order to receive these relief-type payments, all recipients must meet certain qualifications. Specifically, recipients must own a share of the crops grown or must have some other interest in the land, directly related to the farming operation on the land, to receive benefits under the two programs. It is undisputed that, at the time the application forms for benefits were filled out, neither Bateman Company nor Valley View Farms were engaged in any farming operations on the land although all parties signed the forms stating that all parties involved had some interest in the land and/or crops on the land. Consequently, after a series of hearings and appeals at the agency level, it was determined by Defendant and its agents in the National Appeals Division on March 26, 1999, that Plaintiffs were not eligible for the funds they received pursuant to the Acreage Reduction Program or the Disaster Benefits Program.

Plaintiffs asserted that they entered into this agreement only to procure funds whereby they would be able to collect rent payments on the property leased to Shaw. Defendant alleged that Plaintiffs jointly signed the application forms on which incorrect information was listed regarding Bateman Company's and Valley View Farms' ownership interest in the farmlands and the crops grown on the land. The incorrect information was the basis upon which Defendant determined that Plaintiffs were not eligible for the benefits received. Plaintiffs argued that, contrary to Defendant's assertions, there was no wrongdoing on their part in filling out the benefit application forms. Rather, Plaintiffs' defense is that the parties signed the applications without reading their contents after receiving information from the local agents that they were, in fact, eligible for the money. Defendant alleged that this was no defense and consequently Bateman Company and Valley View Farms are jointly and severally liable for all amounts wrongfully disbursed. Specifically, Defendant claims that Plaintiffs owe $334,173 plus interest as they were ineligible for the benefits received.

Defendant claims that Plaintiffs are liable for the whole amount as they are considered "one person" under the applicable statute discussed below. Oliver Bateman in return argued that he and his company are separate entities, distinct from the Shaws and Valley View Farms and thus should not be held jointly and severally liable for the whole amount the Defendant claims has been wrongfully disbursed. Valley View Farms argued that they were separate and distinct from the other parties and should not be held jointly and severally liable for the whole amount owed. Defendant argued that Plaintiffs and Shaw are 'one person' under the statute as they do not meet the requirements for consideration as separate entities. Further, Defendant argued that Plaintiffs are jointly and severally liable for the whole amount requested with no equitable adjustment to the amount.

These allegations and issues are ones that have rarely been addressed in this circuit or others. There was no record in the Eleventh Circuit of any cases having a fact pattern involving wrongfully disbursed funds from the two federal programs at issue in this case. Accordingly, this Court looked to the statutes and regulations directly on point, as well as what caselaw does exist. Though there are many factors to consider in this Order, the first, after the applicable standard of review, is the initial argument by Defendant that this Court lacks subject matter jurisdiction to hear this case.

## II. Undisputed Facts Supporting Summary Judgment

The undisputed facts of this case are as follows:

— Plaintiffs applied for and received funds from federal programs designed to assist farmers who have an interest in crops on farmland or who share in the risk of the loss for the crops;

— On the application forms for these funds, information was entered indicating that Plaintiffs owned various percentages of interests in different crops on the lands in question;

— Plaintiffs did not, in fact, have an interest of any kind in the crops on the land because the land was rented by Plaintiffs to John Shaw for cash and only Shaw was engaged in farming operations on the land;

— As a result of Plaintiffs not having an interest in the crops on the land, Plaintiffs were not eligible for the amounts received from Defendant;

— Under the governing statutes and regulations promulgated by Congress and Defendant, after it was determined that Plaintiffs were not eligible for the amounts they had received from Defendant, Plaintiffs became liable to Defendant for a full reimbursement of the amount erroneously paid by Defendant; and

— Under the applicable law, outlined below, Defendant determined that Plaintiffs are not, for any reason, entitled to an equitable adjustment to the amount owed and that Plaintiffs were jointly and severally liable for the full amount owed.

## III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the pleadings, affidavits, and other evidence produced show there is no genuine question of material fact and the moving party is entitled to judgment as a matter of law. As the Supreme Court has held, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P. 1).

Applicable substantive law identifies what facts are material. *U.S. v. 1419 Mount Alto Road,* 830 F.Supp. 1476 (N.D.Ga.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Facts which in good faith are disputed, but which do not resolve or affect the outcome of the suit will not properly preclude the entry of summary judgment. *Id.* In short, such facts are not material. A district court grants summary judgment only 'if everything in the record... demonstrates that no genuine issue of material fact exists.' *1419 Mount Alto Road,* 830 F.Supp. at 1480 (quoting *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir.1986)). Movants are entitled to summary judgement in this case only if the evidence produced so far meets the above standards as applied to the following law.

## IV. Availability of Judicial Review in this Case

### A. Statutory Authority and Caselaw Supporting Judicial Review

There is clear authority from statutes, regulations and caselaw that the issues in

this case are subject to judicial review. "A final determination of the [National Appeals] Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5." 7 U.S.C.A. § 6999. The Administrative Procedure Act, ("APA"), also provides that "final agency action for which there is no other adequate remedy in a court is subject to judicial review." 5 U.S.C. § 704. In this case, the National Appeals Division, ("NAD"), was the final decision maker at the agency level. NAD made the final determination that Plaintiffs were not entitled to any benefits under either program. NAD also determined that Plaintiffs were jointly and severally liable for all amounts owed with no equitable adjustment thereto. Consequently, contrary to Defendant's arguments, there is clear statutory authority for this Court's jurisdiction to hear this case.

There is also guidance from caselaw on the issue of judicial review of Defendant's actions in this matter. "The United States Supreme Court has repeatedly buttressed the principle of presumptive reviewability by requiring clear and convincing evidence of legislative intent to cut off judicial review." *Coomes v. Adkinson*, 414 F.Supp. 975, 985 (D.S.D.1976) (citing *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971)). "In the event that ... there is no avenue of judicial review other than the Administrative Procedure Act, this Court holds that in those circumstances, § 10 of the Act may provide an adequate independent jurisdictional predicate." *Id.* "This right to judicial review is limited, however, by very narrow exceptions set forth in section 701." *Southeastern Peanut Ass'n v. Lyng*, 734 F.Supp. 519, 522 (M.D.Ga.1990).[2] "This chapter applies, according to the provisions thereof, except to

the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Id.* The statutes and regulations governing the parties in this case clearly do not preclude judicial review. Therefore, whether the agency action is discretionary in nature should be analyzed.

▬▬ "Judicial decisions have established two categories of statutes which fall within the narrow agency discretion exception. First are cases where the statute is so broadly drawn that it does not provide judicially manageable standards for a court to apply in measuring the agency's action." *Id.* (citation omitted). "The second category includes those statutes which involve questions of both judgment and choice, i.e., 'the exercise of informed discretion.'" *Id.* "Unless Congress has statutorily provided some standard by which the court is to measure an agency's actions, review is impossible and the court is without jurisdiction." *Id.* "The informed discretion category of the agency discretion exception concerns situations where even experts could disagree." *Id.* at 523 (citation omitted). "Judicial review under a statute authorizing agency action is not precluded because some of that action may be committed to agency discretion by law." *Id.* (citation omitted). "Rather, judicial review is precluded only to the extent that such discretion exists, and only to the extent that the action is committed to agency discretion since §§ 706(2)(A) authorizes a reviewing court to remedy an 'abuse of discretion.'" *Id.* "Thus, all agency discretion is not insulated from judicial review." *Id.* Accordingly, there is a statutory basis for judicial review of Defendant's decision because (1) there are standards by which this Court can analyze the Defendant's actions and (2) the statutes and regulations provide guidelines for eligibility for federal

---

**2.** (The agency's acts were found to be outside of judicial review only because there were no judicially manageable standards to which a court could compare the agency's actions. The district court found that experts *could*

disagree about the shrinkage allowances involving peanut classifications because the Secretary had to take into account many variables in making decisions).

relief funds and therefore the determination of eligibility is not a decision left entirely to the agency's discretion.

Although the statute under which Plaintiffs received the funds state that the Secretary of Agriculture *may* make price support or other payments available to farmers, there are guidelines under which the Secretary must determine eligibility for those funds [3]. *See* 7 C.F.R. §§ 1400.3, 1400.5, 1400.6, 1400.7 and 1400.8. As asserted many times now by Defendant in their briefs, there are requirements farmers must meet in order to become eligible for payments under the various programs. For example, farmers must have an interest in crops grown on the land that is the subject of the benefit payments. On the application forms, there are spaces where those interest percentages must be listed in order to determine eligibility pursuant to 7 C.F.R. § 1400.6 [4]. There are limitations on payments that may be received by each, separate entity. *See* 7 C.F.R. §§ 1497, 1413 and 1477 [5]. Further, ownership or some other form of interest in the subject land must be shown. 7 C.F.R. § 1400.401 (detailing what interest the payee must have in the land to be eligible for benefits).

As shown by these guidelines, the decision to disburse benefit payments to farmers is not completely in the discretion of the Secretary of Agriculture or their employees. Before eligibility is determined, many forms must be filled out, certain statutorily mandated procedures must be followed and eligibility is determined accordingly. The Secretary cannot, as alleged by Defendant, decide on a whim whether or not to award one farmer relief payments and not to another. There are guidelines and procedures to be followed.

As to the joint and several liability determination by Defendant, there are also clear, precise standards which must be met before entities are determined to be "one person" or "separate" persons under the guidelines.[6] Therefore, there are standards to which a district court can look and determine if the Secretary's actions are arbitrary, capricious or contrary to law.

One district court found, when analyzing these standards regarding "one person" versus the "separate person" question, "[i]t is well settled that 7 U.S.C. §§ 1385 [the "Finality Rule" in soil conservation programs]: is not a complete bar to judicial review of agency action related to farm program payments." *Huntsman Farms v. Espy*, 928 F.Supp. 1451, 1456 (E.D.Ark. 1996), *aff'd*, 105 F.3d 662 (8th Cir.1997). "Although factual determinations of an agency are not subject to judicial review under section 1385, we are free under the APA to review legal questions or agency action asserted to be arbitrary or capricious." *Id.* (citations omitted); *see also Madsen v. Department of Agriculture*, 866 F.2d 1035, 1036 (8th Cir.1989) (citation omitted).[7] "Similarly, regulations covering appeals of agency determinations in specified farm programs, ... do not preclude all judicial review of farm program payment decisions. Instead, these regulations limit the extent of review available within the administrative agency." *Huntsman*, 928 F.Supp. at 1456 (citation omitted). The regulations provide that, in reviewing Defendant's decision, a Court "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

**3.** The former statute, since repealed, which gave the Secretary this authority was 7 U.S.C. § 1339a.

**4.** The regulation numbers have changed since the incidents involved in this litigation occurred. However, the substance of the law was unchanged.

**5.** Section 1497 and 1413 have since been renumbered or removed.

**6.** 7 C.F.R. § 1400.7

**7.** Plaintiff was contesting the bushels-per-acre wheat yield assigned to his South Dakota farm by the Secretary of Agriculture.

law." 5 U.S.C.A. § 706(2)(A). The reviewing court may also set aside agency action that is found to have been "without observance of procedure required by law." 5 U.S.C.A. § 706(2)(D). In reviewing final agency decisions, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C.A. § 706. Accordingly, the case at bar clearly involves a situation where Plaintiff is permitted to seek review of Defendant's determinations that are allegedly arbitrary, capricious, an abuse of discretion or contrary to law as there are clear standards by which this Court can analyze Defendant's determinations of eligibility under the relief programs. Defendant's Motion for Summary Judgment on this ground is DENIED.

### B. Procedural Argument on Subject Matter Jurisdiction

■ Defendant also made a procedural argument that, since the decision was one committed entirely to agency discretion, there is no subject matter jurisdiction for this Court to hear this case. Plaintiffs asserted in their responsive briefs that Defendant waived the issue of subject matter jurisdiction by not asserting the argument in their answer. However, according to Federal Rules of Civil Procedure 12(b) and (h)(3), as this is a question of subject matter jurisdiction, the argument can be raised at any time. Accordingly, Plaintiff's Motion for Summary Judgment on this ground is DENIED.

### C. Finality Rule

■ The "Finality Rule," as applicable during the time the incidents in this case took place, was found in 7 C.F.R. § 780.17(c) and provided that:

Program determinations issued by a State or County Committee, or employees of such committees, made in good faith in the absence of misrepresentation, false statements, fraud, or willful misconduct by the participant, ... shall be final and no action shall be taken to recover amounts found to have been disbursed thereon in error unless the producer had reason to believe that the determination was erroneous.

Plaintiffs have vigorously argued that Defendant is prohibited from attempting to collect any amounts paid under the acreage reduction program or the disaster relief program pursuant to this Finality Rule. Defendant argued that Plaintiffs do not have this defense available as false information was submitted in the application forms.

The Finality Rule unambiguously states that a disbursement by a state or county office is only final in the *absence* of false statements or misrepresentations. The application forms are also quite clear to the signer that you are agreeing to any statement made within the document by placing your signature thereon. Form CCC–477, second row, reads "THIS CONTRACT, is entered into between the Commodity Credit Corporation (CCC) and the undersigned producers on the farm identified above for the 1993 crop(s) identified in column 4 which are designated by the operator of the farm by entering "YES" in column 5 and/or 6, and initialing." *See* Supplemental Brief of Def., Tab 28, Ex. 1. The next sentence in that paragraph reads, "[t]he terms and conditions of the contract are contained in the appendix to the contract." *Id.* Further, the paragraph reads, "BY SIGNING THIS CONTRACT PRODUCERS ACKNOWLEDGE RECEIPT OF THE APPENDIX TO THIS CONTRACT." *Id.* Exhibit two (2) of the same document is the appendix which states clearly and precisely what the terms of the contract were, what entering into the contract entailed, to what the party was agreeing, etc. For example, five lines down on the first page of this document reads, "failure to furnish the correct, complete information will result in a determination of ineligibility for certain program benefits. The provisions of criminal and

civil fraud statutes ... may be applicable to information provided by the producer on CCC–477." *Id.* at Ex. 2.

This particular document also precisely defined the terms used in the contract. Such as, "*[o]perator* means the producer who is in general control of the entire farming operation on the farm during the program year, as determined in accordance with 7 C.F.R. Part 719." *Id.* at P. "*Producer*" means a person who as owner, landlord, tenant, ... is entitled to share in the crops available for marketing (or shares in the proceeds thereof) as determined in accordance with 7 C.F.R. Part 1413. The term 'producer' ... shall include both the 'operator' and other producers of the crop on the farm." *Id.* at R. Further, part 2 entitled "AGREEMENT" reads, "[t]he producer agrees to pay any advance or final payment which CCC may make pursuant to this contract if CCC determines that, notwithstanding any action of a representative of CCC, that the producer is not in compliance with the provisions of the contract and all applicable program regulations, or if CCC determines that the producer is not otherwise entitled to the payment." Section 15 of this same document sets out specifically the consequences of erroneously representing facts on the application forms and contracts. Specifically, that paragraph states that one giving erroneous information would be required to repay any amounts for which the party was ineligible. There is no indication in that paragraph that there has to be an intent to defraud the Department or intent to mislead. The contract merely states that if erroneous information is given which causes a party to receive funds for which they are not eligible, that person will be required to reimburse the Department for any amount wrongfully paid.

Plaintiffs argued in error that they should benefit from the Finality Rule because they did not intend to mislead anyone. Plaintiffs claimed they only followed the advice of Defendant's employees when signing the application forms. Plaintiffs erroneously relied upon their defense that, since they did not read the documents before signing them, they should not be held responsible for the information contained in the documents. That argument is clearly not a viable defense in light of well-established federal contract law concerning signing documents a party has not read.

## V. Federal Contract Law Claim

■ "In a contract suit where the United States is a party, as a general rule the contract principles of federal law govern." *First National Bank v. Small Business Admin.,* 429 F.2d 280 (5th Cir.1970). *See also Miree v. DeKalb County,* 433 U.S. 25, 28, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (Federal law applies when the contract being interpreted "is one in which the United States is a party, and one which is entered into pursuant to authority conferred by federal statute. The necessity of uniformity of decision demands that federal common law, rather than state law, controls the contract's interpretation.") Federal law clearly mandates the finding that a party is responsible for the contents, limitations and terms of documents on which they place their signature.

■ Defendant correctly asserted that federal common law, rather than Georgia law, applies to this principle in this case as Defendant is the United States. Defendant also correctly argued that the Plaintiffs' failure to read the applications and contracts before signing them did not relieve them of future liability for the conditions pertaining to the contract. *See MCC–Marble Ceramic Center, Inc. v. Ceramica Nuova d'Agostino,* 144 F.3d 1384, 1387, n. 9 (11th Cir.1998), *cert. denied,* 526 U.S. 1087, 119 S.Ct. 1496, 143 L.Ed.2d 650 (1999) ("parties who sign contracts will be bound by them regardless of whether they have read them or understood them"). Plaintiffs, in seeking public funds in the form of disaster and acreage reduction payments, "must bear a great measure of

responsibility in advising the Government of the true and accurate factual basis of the claim. Eligibility for payments must be established by the recipient." *United States v. Cooperative Grain & Supply Co.,* 476 F.2d 47, 55 (8th Cir.1973) (grain producers held liable for wrongfully disbursed funds when false but not fraudulent statements were made to the Government whereby the producers received funds for which they were not eligible). Regardless of whether Plaintiffs read the contracts, were not verbally informed by Defendant's employees of the eligibility requirements or were not physically shown the express terms of the contract, there is no denying the signatures of Plaintiffs and their agents on the forms. It is absolutely no defense that they did not read the contracts before signing them. Accordingly, Plaintiffs are not entitled to the benefit of the Finality Rule in this case because of the false information listed in the documents.

■ Representatives for Bateman Company, Valley View Farms and the individual members of the Shaw family signed the contracts stating that Bateman Company and Valley View Farms had an interest in the crops on the land. It is clear from the testimony and briefs of the Plaintiffs that neither were involved in any way in the farming of the land. Rather, they were merely the landlords receiving rental payments from John Shaw. As landlords, they did not have an interest in the crops grown on the land. As stated in the briefs, the leases were for cash. The leases were not, as is sometimes the case, for a percentage of the crops grown and sold on the land. Consequently, any amounts received because of this misrepresentation is due to be repaid to Defendant with interest as calculated in 7 C.F.R. Part 1403.

## VI. Equitable Adjustment

■ Defendant's agents at several different levels found that Plaintiffs were not entitled to an equitable adjustment to the amount owed because of the manner in which Plaintiffs and their agents applied

for the funds. Defendant determined that, under the applicable regulations, Plaintiffs were "one person" as they submitted a joint, misleading application for relief funds. Plaintiff has presented no evidence to overturn Defendant's decision. There was no abuse of discretion and Defendant followed the law when it determined that Plaintiffs were not eligible for the payments received.

The statutes, regulations and the contract clearly set forth the requirements for receiving the funds and Plaintiffs did not meet those requirements. Plaintiffs cannot in good faith argue that they relied upon the representations of Defendant's agents concerning the information entered on the contracts. The Plaintiffs signed the documents containing the false information. If the contracts would have been read before they were signed, the Plaintiffs would have noticed the false information and could have corrected the information. Accordingly, Plaintiff's Motion for Summary Judgment regarding the issue of (1) the Finality Rule and (2) equitable adjustment is DENIED and Defendant's Motion on these grounds is GRANTED.

## VII. Statute of Limitations

■ Plaintiffs also argued that they were not responsible for repaying any amount because of a statute of limitations set out in the applicable regulations governing this matter. The regulation reads, "[n]ot later than 10 working days after an adverse decision is made that affects the participant, the Secretary shall provide the participant with written notice of such adverse decision and the rights available to the participant under this subchapter." 7 U.S.C.A. § 6994. There does not seem to be any precedent from the Supreme Court or Eleventh Circuit Court of Appeals in which this specific statute has been interpreted as a traditional type of statute of limitation. While the statute reads that the Secretary is to notify the participant within ten (10) days of an adverse decision, there is no support for dismissing a case based on the Secretary not following this ten-day notice requirement. The only

published decision dealing with this issue was a recent case from a district court in Kansas applying similar law regarding the restructuring of an FSA loan to a farmer. *See Lewis v. Glickman,* 104 F.Supp.2d 1311 (D.Kan.2000). In *Lewis,* the court found that there was no evidence of prejudicial error on the government's part by not informing Lewis within ten days of their adverse decision to not restructure his loan. *Id.* at 1329. Rather, Lewis was benefitted as he was permitted to "remain on the farm longer without facing foreclosure proceedings." *Id.*

Likewise, there does not seem to be any prejudicial error on the government's part in this case by failing to notify Plaintiffs of their adverse decision within ten days. The adverse decision was made on March 22, 1995. Plaintiffs alleged they were not notified until December 9, 1997, almost twenty-one months later. However, there is no evidence that Plaintiffs suffered any type of harm by not finding out sooner that Defendant had declared them ineligible for the benefits they received. Although Defendant waited a substantial amount of time to notify Plaintiffs of the adverse decision, this does not seem to be any reason to dismiss this action.

The Plaintiffs failed completely to state precisely *how* they were harmed or prejudiced by not learning of Defendant's decision until much later. Plaintiffs, like the Plaintiffs in *Lewis,* if anything, benefitted by not having to pay back the money owed for a considerable length of time. Plaintiffs essentially have been allowed to use the Defendant's money, interest free up until now, for several years during the appeals process. Accordingly, Plaintiffs' Motion for Summary Judgment on this ground is DENIED.

## VIII. Joint and Several Liability of Plaintiffs: "One Person" or "Separate" Entities?

### A. Statutory Basis for Joint and Several Liability

■ The applicable federal regulation that describes "separate person" status states, "[i]n order for an individual or entity ... to be considered to be a separate person for the purposes of this part, in addition to any other provision of this part, the individual or entity must:

(i) Have a separate and distinct interest in the land or the crop involved;

(ii) Exercise separate responsibility for such interest; and

(iii) Maintain funds or accounts separate from that of any other individual or entity for such interest."

7 C.F.R. § 1400.3(b), *Person* (2).

As for subsection (i), Plaintiff Valley View Farms and Plaintiff Bateman Company had separate interests in the land itself. Plaintiffs owned the land but rented it to John Shaw for farming purposes. Plaintiffs seem to have retained no interests in the land above that of any other landlord. The lease was clearly "for cash" and not for any interests in the crop or income related thereto. As for (iii), there is no indication that Plaintiffs and Shaw had joint responsibility for the costs of farming as indicated in that subsection of the regulation. No party has alleged that Plaintiffs were responsible in any way for any crops grown on the land. However, subsection (ii) is what creates a problem for Plaintiffs in this case, because the parties did not exercise separate responsibilities for their respective interests in the farmland.

While there seems to have been no commingling of Shaw's farm accounts with Plaintiffs' accounts, the issue of applying for and accepting money from Defendant created a joint interest in funds pertaining to the farmland. Bateman Company, Valley View Farms, John Shaw and other members of Shaw's family all signed the various documents through which they applied for federal assistance. Until signing these forms, Plaintiffs had maintained separate responsibilities for their interests in

the farmlands, as required by subsection (ii). However, at the time all three groups came together to request funds to ensure Plaintiffs were paid the rent owed, the separate status ended and they became one, joint entity requesting federal funding.

Plaintiffs have argued all along that they entered an agreement with Shaw whereby all parties would apply for funds to ensure Shaw's lease payments were made. At that point and when all parties accepted federal funds, there was a commingling of interests in the farmlands. The fact that Plaintiffs retained no interests in the crops is insignificant on the issue of joint and several liability. Plaintiffs and Shaw entered into an agreement whereby Shaw's lease payments would be made and Plaintiffs would lose no money. Plaintiffs cannot in good faith argue that they remained separate persons after this agreement.

### B. Guidance from Caselaw Regarding Joint and Several Liability

The caselaw from this and other jurisdictions also provide some assistance in the analysis of these facts in relation to the applicable statutes and regulations. In a case somewhat similar to the case at bar, a court determined that "the arrangement by which ... [the farm was financed] ... violated 7 C.F.R. § 795.7." [8] *Golightly v. Yeutter*, 780 F.Supp. 672, 674 (D.Ariz. 1991). In *Golightly*, one farm was owned by Julie Golightly and her mother Dolores Golightly. Their farm was Tiffany Farms and its operations were financed by Regis Farms. Regis Farms was owned by J.L. Golightly, Julie's father, and Dolores Golightly. The court in *Golightly* found that "on their interests as individual landowners, as joint owners of Regis and as partnership members, Dolores Golightly and J.L. Golightly, Jr., had an interest in the crops and the land and provided financing through Regis." *Id.* "We have determined that this arrangement resulted in a failure

to maintain a separate and distinct interest in the crop or the land, separate responsibility for such interest and separate responsibility for payment of the cost from a fund or accounts separate from that of any other individual or entity." *Id.* Thus, the financial arrangements of a farming operation can violate the regulations if the fiscal matters of each separate entity are not kept separate from the others.

Another court interpreting these statutes stated, "[t]he regulation defining 'person' ... is found in 7 C.F.R. § 795.3(b)(1)." *Hanson v. Espy*, 8 F.3d 469, 473 (7th Cir.1993) (central issue in case was standard used to determine an entity's income for eligibility of federal farm relief). "It states that 'person' means an individual, corporation, or other legal entity." *Id.* Section 795 also covers the status of corporations: A corporation (including a limited partnership) shall be considered as one person, and an individual stockholder of the corporation may be considered as a separate person to the extent that such stockholder is engaged in the production of the crop as a separate producer and otherwise meets the requirements of §§ 795.3, except that a corporation in which more than 50 percent of the stock is owned by an individual ..., or by a legal entity, shall not be considered as a separate person from such individual or legal entity. *Id.* (citing 7 C.F.R. § 795.8(a)). Therefore, the way in which a corporate entity is organized also affects eligibility and issues of joint and several liability.

### C. Applying Joint and Several Liability

■ After it is determined that several entities make up one statutorily-prescribed "person," 7 C.F.R. § 1400.7 details the responsibility of joint and several liability as: "If two or more individuals or entities are considered to be one person and the total payment received is in excess of the appli-

---

**8.** In 7 C.F.R. § 795.7, Congress set out guidelines by which the Secretary of Agriculture is to determine eligibility of benefits based on the legal structure of joint operations.

cable payment limitation provision, such individuals or entities shall be jointly and severally liable for any liability which arises therefrom. The provisions of this section shall be applicable in addition to any liability that arises under a criminal or civil statute."

The regulation on equitable adjustment provides that "[a]ctions taken by an individual or an entity in good faith on action or advice of an authorized representative . . . may be accepted as meeting the requirements of this part to the extent the Deputy Administrator deems necessary to provide fair and equitable treatment to such individual or entity." 7 C.F.R. § 1400.8.

Plaintiff's argument primarily centers on these regulations along with the the 'Finality Rule.' Plaintiffs argued that their reliance on the advice of the state officials regarding their eligibility is enough to require Defendant to make an equitable adjustment to the amount Defendant requested Plaintiffs to repay. However, the regulation plainly states that the reliance on the agents must have been in good faith. That argument brings back the same analysis applicable to the Finality Rule. That is, a party cannot claim reliance in good faith after that party signed a contract containing false information and submitted the same to Defendant. Again, the defense of not having read the contract is unavailable under federal law. To reiterate, parties are responsible for contracts they sign without reading. Therefore, there was no 'good faith' reliance by the parties upon advice given by Defendant's agents.

## IX. Conclusion

Summary Judgment is denied as to Defendant's argument that there is no basis for judicial review of this case. However, the undisputed facts in the record show that Defendant is entitled to Summary Judgment on the grounds of: (1) Plaintiffs and their agents signed contracts wherein false statements were made regarding their respective interests in the farmland and crops in question; (2) Plaintiffs failed to read the contracts before signing them, thus they are liable for the statements made therein; (3) Plaintiffs are not entitled to an equitable adjustment in the amount owed because of the false statements in the contracts; (4) Defendant is not barred from recovery based on the applicable ten-day notice requirement; and (5) Plaintiffs are jointly and severally liable for all amounts owed as they are considered "one person" under applicable statutes and caselaw. Summary Judgment is hereby **DENIED** as to Plaintiffs. Accordingly, **JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT** and Plaintiffs are ordered to reimburse Defendant for all amounts owed including the appropriate rate of interest.